541 F.2d 343
 Robert Samuel HANLON, a minor by his parent and natural
guardian, Robert Story Hanlon, and Robert Story
Hanlon in his own right, Appellants,
v.
CYRIL BATH CO., Appellee,
Eugene M. BERNSTEIN, Trustee in Bankruptcy for Wayne Iron
Works, Third-Party Defendant.
 No. 75-1334.
 United States Court of Appeals, Third Circuit.
 Argued Sept. 30, 1975.
Decided Dec. 9, 1975.
 
 James E. Beasley, Jeffrey M. Stopford, Philadelphia, Pa., for appellant; Beasley, Hewson, Casey, Kraft & Colleran, Philadelphia, Pa., of counsel.
 Joseph V. Pinto, Eugene M. FitzMaurice, Philadelphia, Pa., for appellee.
 Before HASTIE, VAN DUSEN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 HASTIE, Circuit Judge.
 
 
 1
 This is a products liability case. Appeal has been taken from a judgment entered upon a jury verdict that absolved Cyril Bath Co. from strict liability for an accidental injury suffered by the then 18 years old plaintiff, Robert Samuel Hanlon. He had been injured while operating a press brake that Cyril Bath had manufactured and sold some 17 years before the accident.
 
 
 2
 A press brake is a machine used to bend, form or punch metal. Essential force is supplied by a powered ram that moves vertically. At the time of this accident the activating component of the press brake in suit was a movable foot switch connected with the main structure by a long flexible cable.
 
 
 3
 During his summer vacation from school, young Hanlon was employed by the Wayne Iron Works. Newly assigned to operate the press brake,[1] he attempted with his left hand to remove a piece of metal that had lodged in the machine. While so engaged, he accidentally moved his foot so that it pressed down upon the electrical foot switch lying on the floor. This activated the ram and caused it to descend upon and sever his fingers.
 
 
 4
 It is the theory of the complaint that the press brake, as manufactured and sold by appellee, Cyril Bath Co., was defective in that it lacked any safety device that would preclude activation while the operator's hand was under the ram. This inadequacy of design is alleged to have been the proximate cause of the accident in suit.
 
 
 5
 The accident occurred in Pennsylvania and the parties properly recognize that liability depends upon Pennsylvania tort law. Legal analysis is more sharply focused by the fact that the Supreme Court of Pennsylvania has adopted and undertakes to apply Section 402A of Restatement of Torts, Second, as a correct statement of the circumstances in which a seller of a product will be subjected to strict liability for physical harm suffered by a user because of a defective condition of a product.[2]
 
 
 6
 However, by its terms Section 402A imposes strict liability only where the defective product reaches "the user or consumer without substantial change in the condition in which it is sold".[3] And an attendant "comment l " explains that "user" includes an employee of the purchaser. Moreover, the black letter text of Section 402A is followed by a "caveat" that no opinion is expressed whether the doctrine of that section should apply "to the seller of a product expected to be substantially changed before it reaches the user".[4] Facts not heretofore stated make the consequences of alterations after sale, that were thus left undetermined by Section 402A critical in this case.
 
 
 7
 Evidence that stands undisputed in the present record shows that the electrical starting device used by Hanlon had been substituted by the purchaser, Hanlon's employer, for the very different starting mechanism that Cyril Bath had sold as a component of this press brake some 17 years before the accident. The original starter was a treadle attached to the front of the machine at a point some 8 inches above the floor. It was not an electrical switch. Indeed, it required an operator first to lift his foot a considerable distance and then to exert some 65 pounds of downward pressure on the treadle to release or activate the ram. In contrast the substituted starting device was a small portable electrical switch, connected with the press brake by a flexible cable. Hanlon described it as similar to a dictaphone pedal. It could conveniently be laid on the floor and no great pressure had to be exerted upon it to activate the ram.
 
 
 8
 We hold that, in relation to danger of accidental activation, this substitution of a significantly different and much more sensitive starting mechanism was a "substantial change in the condition in which . . . (the press brake was) sold", within the meaning of Section 402A. And it occurred before the machine reached the user, Hanlon. Thus, to impose strict liability upon the seller in this case would carry the law beyond the provisions of Section 402A as approved by the American Law Institute and subsequently adopted by the highest court of Pennsylvania. Indeed, in Dennis v. Ford Motor Co., 3d Cir. 1973, 471 F.2d 733, 735, we recognized this distinction made by Section 402A between changes before and changes after the product reaches the injured and complaining user. However, the distinction did not preclude liability there because the product had not been altered until after it reached the subsequently injured user.[5] Thus, Section 402A was applicable and the court had to decide only whether the responsible cause of the injury was an alleged original defect or the user's own modification of the product.
 
 
 9
 In the present case the trial judge charged the jury that one who sells a defective product is subject to strict liability for physical harm caused thereby to the user if the product is "expected to and does reach the user or consumer without substantial change in the condition in which it is sold". He also charged that the plaintiff had the burden of proving by a fair preponderance of evidence that there had been no substantial change in the press brake between its sale in 1951 and the plaintiff's accident in 1968. While this was a correct statement of the rule of Section 402A, we think a substantially changed condition of the allegedly defective machine was established by undisputed evidence. Clearly, the substitution of the easily depressed mobile electrical foot switch for the original fixed elevated mechanical treadle that was responsive only to some 65 pounds of downward pressure removed a safeguard against accidental activation that had been incorporated in the original structural design and would have been adequate to prevent this accident. We are not persuaded that Pennsylvania would permit strict liability, beyond the explicit terms of Section 402A, to be imposed upon this seller for the consequences of an intervening change, made in its product by a responsible third person,[6] that so clearly created the particular risk that eventuated in injury to the plaintiff.[7]
 
 
 10
 The foregoing analysis causes us to conclude that, beyond recovering a jury verdict as it did, the defendant was entitled to a directed verdict, for which it made a proper motion at the conclusion of all testimony as well as at the close of the plaintiff's case. Therefore, we do not reach the questions of various alleged trial errors in other connections which the plaintiff has argued as grounds for a new trial.
 
 The judgment will be affirmed.[8]
 
 
 [1]
 The testimony shows that at the time of the accident, the machine was not being used as a press brake, for which it was sold, but as a punch press, which was a secondary use, and the manufacturer could not know the use to which the machine would be put. A safety device, proper if the machine was to be used as a punch press, had been offered by the manufacturer. See Rios v. Niagara Machine and Tool Works, 1973, 12 Ill.App.3d 739, 299 N.E.2d 86
 
 
 [2]
 In Webb v. Zern, 1966, 422 Pa. 424, 427, 220 A.2d 853, 854, the court quoted the full text of Section 402A and announced: "We hereby adopt the foregoing language as the law of Pennsylvania."
 
 
 [3]
 Section 402A reads:
 " § 402A Special Liability of Seller of Product for Physical Harm to User or Consumer
 "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 "(a) the seller is engaged in the business of selling such a product and,
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
 
 
 [4]
 And see "comment p" that follows and elaborates this caveat
 
 
 [5]
 There were other significant differences. The evidence did not clearly establish that the accident would not have occurred but for the purchaser-user's addition of the fifth wheel, for the installation of which the tractor was designed. The jury had been charged that they might find the manufacturer liable "(p)rovided you find no change in the tractor by plaintiff caused the accident."
 
 
 [6]
 The Restatement makes the general observation that "there will be some situations" in which responsibility will be shifted "to the intermediate party who is to make the changes". Section 402A, Comment on Caveat p. Moreover, if the foot switch was a device specially adapted for incorporation in a press brake, it may be that its seller would be subject to strict liability for such harm as we have here
 
 
 [7]
 Accord, Speyer, Inc. v. Humble Oil & Refining Co., 3d Cir. 1968, 403 F.2d 766, 771
 We have not overlooked a recent footnote dictum in a Pennsylvania Supreme Court case that speaks of a change in condition between original sale and injurious use as presenting merely a problem of causation. See Kuisis v. Baldwin-Lima-Hamilton Corp., 1974, 457 Pa. 321, 333 n. 15, 319 A.2d 914, 922 n. 15.
 
 
 [8]
 A motion to quash the present appeal is denied