391 A.2d 1020

**Orca C. AZZARELLO**

v.

**BLACK BROTHERS COMPANY, INC., a corporation, Appellant,**

**Parts Processing, Inc., a corporation, Additional Defendant.**

Supreme Court of Pennsylvania.

Argued Sept. 27, 1977.

Decided Oct. 5, 1978.

George M. Weis, Weis & Weis, Pittsburgh, for appellant.

John E. Evans, Jr., Evans, Ivory & Evans, Pittsburgh, for Orca C. Azzarello.

William A. Pietragallo, Meyer, Darragh, Buckler, Bebenek & Eck, for Parts Processing, Inc.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

NIX, Justice.

This appeal raises the question of the appropriate form of jury instruction in products liability cases in this Commonwealth. In the instant case, Azzarello's right hand was pinched between two hard rubber rolls in a coating machine manufactured and sold by the defendant, Black Brothers, Inc. Azzarello brought this suit against Black Brothers Company, Inc., the manufacturer-appellant relying solely on

the theory of strict liability under Section 402A of the Restatement Second of Torts.[1] The manufacturer, by joining appellee's employer, Parts Processing, as an additional defendant, injected into appellee's strict liability case the issue of whether the negligence of the employer was the sole or contributing cause of her injuries. Accordingly, the trial court below was faced with the difficult problem of devising instructions for the jury which required a clear exposition of the law of strict liability upon which appellee exclusively relied, and also explaining with clarity the interrelationship of the more traditional and familiar jury instructions sounding in fault and negligence, necessitated by manufacturer-appellant's theory of the case. In so doing, the trial court repeatedly instructed the jury using the phrase "unreasonably dangerous" taken verbatim from the formulation provided by Restatement Second of Torts.[2]

[1]. § 402A. "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Restatement (Second) of Torts, § 402A (1965).

[2]. (1) " . . . one who sells any product in a defective condition, unreasonably dangerous to the user, is subject to liability . . ."

(2) " . . . the plaintiff must prove that the defendant sold the product involved in a defective condition, unreasonably dangerous to the user . . ."

(3) "By a defective condition is meant that the product at the time it leaves the seller's hands in a condition not contemplated by the ultimate user, which will be unreasonably dangerous to him, and you will hear all during this charge the phrase unreasonably dangerous, and that is the key phrase in this type of case."

(4) "A properly made product is defective if its design is unreasonably dangerous. The prevailing interpretation of defective is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety."

The trial resulted in a verdict in favor of the manufacturer and against the additional defendant, appellee's employer, in the sum of One Hundred Twenty-Five Thousand Dollars ($125,000.00). The appellee thereupon moved for a new trial asserting *inter alia* that the trial judge incorrectly instructed the jury that the appellee's burden of proof under Section 402A strict liability required a showing that the machine was "unreasonably dangerous."

The motion for a new trial was granted by the court *en banc.* That court held that the opinion announcing the judgment of the Court in the case of *Berkebile v. Brantley Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975) should be followed, and that the use of the phrase "unreasonably dangerous" in the charge required the grant of a new trial.[3]

## I

██ In granting appellee's motion for a new trial, the court *en banc* found that this issue had not been waived and

> (5) ". . . a manufacturer may be liable under 402A for a design which creates an unreasonable risk of danger to the user. . . . but the design is considered defective only if the design makes the product unreasonably dangerous. Hence, the focal issue in this case is whether or not the absence of infeed guards or the safety devices on the machine, . . . created an unreasonable danger to the operator."
>
> (6) "The focal issue in these cases is whether the absence of safety devices created an unreasonable danger to the operator."
>
> (7) "It is reasonable to require reasonable care to protect even the buyer himself or the user from what may be foreseen as an unreasonable danger to him. Unreasonably dangerous to the user or consumer is the nature of the defective condition. The product must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it or uses it with the ordinary knowledge common to the community as to its characteristics. The test of unreasonably dangerous is whether a reasonable manufacturer would continue to market his product in the same condition . . . .."

**3.** The opinion announcing the Judgment of the Court in *Berkebile v. Brantley Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975) was authored by former Chief Justice JONES and joined by this writer. Mr. Justice ROBERTS and Mr. Justice POMEROY filed separate concurring opinions. Chief Justice EAGEN and Mr. Justice O'BRIEN and Mr. Justice MANDERINO concurred in the result. Counsel and the court below became aware of this decision subsequent to the trial but prior to the disposition of post verdict motions.

was properly before that court for resolution. *See Dilli-plaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1975). We agree. The propriety of the grant of a new trial on the basis of a subsequent decision in a civil case is not a question of first impression in this Commonwealth. *In the Estate of Riley*, 459 Pa. 428, 329 A.2d 511 (1974), *cert. denied*, 421 U.S. 971, 95 S.Ct. 1966, 44 L.Ed.2d 462 (1975), this Court affirmed a lower court's grant of a motion for reconsideration and reargument of its order based on a decision of a federal district court's declaration that a District of Columbia Mortmain statute, analogous to Pennsylvania's Mortmain statute, had been held to be unconstitutional. It cannot, of course, be asserted that a federal district court's opinion as to the constitutional validity of a foreign statute is a binding precedent, but the case was sufficiently relevant to the proper resolution of the matter at issue that the lower court was commended in our per curiam affirmance for its attempt to insure the just and comprehensive resolution of the case. *In Estate of Riley, supra.* In the instant case, appellee's counsel made timely request for a new trial based on the subsequent decision of this Court in *Berkebile, supra,* which the court *en banc* granted to insure a just and comprehensive resolution of the case. This view does not undercut the rationale articulated by this Court in our decision in *Dilliplaine v. Lehigh Valley Trust Co., supra.* One of the principle considerations in reaching our result in *Dilliplaine, supra,* was the need to afford the trial court an opportunity to correct alleged error. An earlier objection to the "unreasonably dangerous" language would have been unavailing at the time of the trial because the instruction as given tracked the language of Section 402A of the Restatement. This Court expressly embraced Section 402A in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). It was not until after the filing of the *Berkebile* decision that appellee was provided with a basis for the averment of error. *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966). In any event the court below had the opportunity to consider and to rectify the error and the question was not raised on appeal for the first time.

## II

The development of a sophisticated and complex industrial society with its proliferation of new products and vast changes in the private enterprise system has inspired a change in legal philosophy from the principle of caveat emptor which prevailed in the early nineteenth century market place to the view that a supplier of products should be deemed to be "the guarantor of his products' safety" *Salvador v. Atlantic Steel Boiler Co.,* 457 Pa. 24, 32, 319 A.2d 903, 907 (1974). The realities of our economic society as it exists today forces the conclusion that the risk of loss for injury resulting from defective products should be borne by the suppliers, principally because they are in a position to absorb the loss by distributing it as a cost of doing business. In an era of giant corporate structures, utilizing the national media to sell their wares, the original concern for an emerging manufacturing industry has given way to the view that it is now the consumer who must be protected. Courts have increasingly adopted the position that the risk of loss must be placed upon the supplier of the defective product without regard to fault or privity of contract.[4]

██ While this expansion of the supplier's responsibility for injuries resulting from defects in his product has placed the supplier in the role of a guarantor of his product's safety, it was not intended to make him an insurer of all injuries caused by the product.[5] It is this distinction that

4. The decision in *Winterbottom v. Wright,* 152 Eng.Rep. 402 (Excl. Ch. 1842) made privity of contract as a condition precedent to liability grounded in negligence. This position was first altered to allow recovery for injury caused by products that were considered eminently dangerous to human life. *Thomas v. Winchester,* 6 N.Y. 397 (1852). In the celebrated decision in *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1056 (1916) the manufacturer's duty was extended to all persons in fact harmed by articles which by their nature are reasonably certain to place life and limb in danger when negligently made. In *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962) the California Supreme Court cast aside the doctrinal overcast of negligence, privity, and warranty and endorsed a theory of strict liability for defective products.

5. Dean Wade explained this distinction as follows:

rests at the core of the problem raised in this appeal. Although the expansion of the supplier's liability has been developed through a breach of warranty analysis [6] as well as that of tort, the Restatement elected strict liability in tort as an explanation for imposing this liability.[6a] We must focus upon two requirements set forth in Section 402A for liability (physical injury)—that the product be "in defective condition" and that it be "unreasonably dangerous." It is the propriety of instructing the jury using the term of "unreasonably dangerous" which forms the basis of appellee's objection to the jury instructions given below.

■ In an effort to assure that a supplier of chattels would not become an insurer, the authors of the Restatement described the characteristic which would justify the

"What do we mean when we speak of strict liability of a manufacturer for harm caused by his product? It is sufficient for a plaintiff to show that he used the defendant's product and that he was injured? The answer to this is no. If the plaintiff's theory is breach of warranty, he must prove the breach—i. e., that the article was not merchantable or was not fit for the purpose sold. If the theory is strict liability in tort, the plaintiff must still prove that the article was unsafe in some way. Thus, the liability is not that of an insurer; it is not absolute in the literal sense of that word."

Wade, *Strict Tort Liability of Manufacturers,* 19 S.W.L.T.J. 13 (1965).

6. Dean Wade has pointed out that the action for breach of warranty originally was tortious in nature, similar to deceit. *Id.*

6a. Dean Wade was of the view that it was preferable to accept the tort strict liability approach rather than the warranty explanation because:

"It eliminates completely the whole problem of the requirement of privity of contract. Neither the Uniform Commercial Code nor the Uniform Sales Act will be applicable, with their definitions of buyer and seller, provisions as to the scope of warranty and requirements of notice of breach. Contractual aspects of disclaimer and rescission are avoided. Reliance on a warranty or on the seller's abilities need not be proved, and no express representation is required. There is no problem about maintaining a death action, and it seems likely that questions of conflict of laws can be more easily solved. From every standpoint it seems far more desirable to eschew the language of warranty and to speak of strict liability in tort. As a famous quotation puts it, 'The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales.'" (footnotes omitted)

*Id.* at 11.

imposition of liability in terms of a "defect." However, this word is not limited to its usual meaning i. e., a fault, flaw or blemish in its manufacture or fabrication. Rather, the critical factor under this formulation is whether the product is "unreasonably dangerous."[7] Under the Restatement approach a product may be deemed to be "defective" even though it comports in all respects to its intended design. One difficulty arises from the fact that the term, "unreasonably dangerous" tends to suggest considerations which are usually identified with the law of negligence. The California Supreme Court expressed this problem as follows:

"The result of the limitation . . . [unreasonably dangerous] has not been merely to prevent the seller from becoming an insurer of his products with respect to all harm generated by their use. Rather, it has burdened the injured plaintiff with proof of an element which rings of negligence. As a result, if, in the view of the trier of fact, the 'ordinary consumer' would have expected the defective condition of a product, the seller is not strictly liable, regardless of the expectations of the injured plaintiff . . . ."

"We recognize that the words, 'unreasonably dangerous' may . . . serve the beneficial purpose of preventing the seller from being treated as the insurer of its products. However, we think that such protective end is attained by the necessity of proving that there was a defect in the manufacture or design of the product, and that such defect was a [legal] cause of the injuries."

*Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 132–33, 104 Cal.Rptr. 433, 441, 501 P.2d 1153, 1161, 1162 (1972); *in*

7. Dean Keaton has observed:
   "The phrase was not intended as setting forth two requirements but only one, the notion being that the product was not defective for the purpose of shifting losses due to physically harmful events unless it was 'unreasonably dangerous.' However, even the term 'unreasonably dangerous' needs further elaboration if it is to serve any useful purpose as a guideline for predicting results or as a standard to be used in the varying claims presented for disposition."
   P. Keaton, Product Liability and the Meaning of Defect, 5 St. Mary's L.J., page 32 (1973).

*accord, Glass v. Ford Motor Co.,* 123 N.J.Super. 599, 304 A.2d 562 (1973).[8]

■ It must be understood that the words, "unreasonably dangerous" have no independent significance and merely represent a label to be used where it is determined that the risk of loss should be placed upon the supplier. It is for this reason that a mere change in terminology does not supply the answer to the basic question as to what instructions should be given to the jury.[9] The answer to the proceeding question rests upon the more fundamental question whether the determination as to the risk of loss is a decision to be made by the finder of fact or by the court. While a lay finder of fact is obviously competent in resolving a dispute as to the condition of a product, an entirely different question is presented where a decision as to whether that condition justifies placing liability upon the supplier must be made.[10]

8. Dean Wade has acknowledged that the term "unreasonably dangerous" is also misleading in that it may suggest an additional element not intended by the authors of the Restatement.

"It [unreasonably dangerous] may suggest an idea like ultrahazardous or abnormally dangerous, and thus give rise to the impression that the plaintiff must prove that the product was unusually or extremely dangerous."

Wade, *On the Nature of Strict Tort Liability for Products,* 44 Miss. L.J. 825, 832 (1973).

9. Alternative terms such as "not reasonably safe," Wade, Strict Tort Liability of Manufacturers, 19 S.W.L.J. 5, 15 (1965), "not duly safe," Wade, On the Nature of Strict Tort Liability for Products, 44 Miss. L.J. 825, 833 (1973), merely obscure the underlying question and serve no real purpose.

10. The inadequacy of the Restatement formulation is explained in part by the circumstances surrounding its acceptance. Dean Wade describes that history as follows:

"As initially prepared by the Reporter, Dean Prosser, and as unanimously approved by the Advisors, the section applied only to foodstuffs and the requirement was that the food be 'in a condition dangerous to the consumer.' It was presented in this form to the Council 2 years later, and the one word 'dangerous' was there changed to read as it is in its present form. This is the way in which it was first published in a form open to the public and in which it first came to the Institute floor. When the issue was raised on the floor, Dean Prosser explained that the Council was worried about liability for a product like whiskey, so that a 'man

Furthermore, we must not lose sight of the fact that regardless of the utility of the Restatement formulation in predicting responsibility, it is primarily designed to provide guidance for the bench and bar, and not to illuminate the issues for laymen. As Dean Wade aptly observed:

"The problem here is similar to that in negligence. The Restatement of Torts has analyzed negligence, described it as a balancing of the magnitude of the risk against the utility of the risk, and listed the factors which go into determining the weight of both of these elements. This analysis is most helpful and can be used with profit by trial and appellate judges, and by students and commentators. But it is not ordinarily given to the jury. Instead, they are told that negligence depends upon what a reasonable prudent man would do under the same or similar circumstances. Occasionally, when one of the factors has especial significance, it may be appropriate for the judge

who consumes it and gets delirium tremens' might recover because a jury 'might find that all whiskey is unreasonably dangerous to the consumer.' The word 'defective' was added to ensure that it was understood that something had to be wrong with the product. The addition of the word 'defective' was attacked on the floor of the Institute by Reed Dickerson, on the ground that the expression 'unreasonably dangerous' was sufficient. Dean Prosser responded with an explanation of the action of the Council and the statement that he had been indifferent to the change. Mr. Dickerson was supported by Dean Lockhart and Professor Joiner, but the Institute, tired after what had been a lengthy discussion of the section, decided by an uncounted voice vote not to make a change. It may be significant that 'defective condition' was defined in the comments in terms of being unreasonably dangerous, so that the terms came close to being synonymous, one explaining the meaning of the other. Finally, it should be noted that the decision had been made while the section applied only to foods (so that 'defective' was essentially the same as unwholesome), and that when the section was later broadened to include all products no reference was made again to this issue. Bad designs and lack of warning are of less significance in regard to food than they are in regard to many other products." (footnotes omitted)
Wade, *supra,* 44 Miss.L.J. 830–31.

to make reference to it in suitable language." (footnote omitted)

Wade, *supra,* 44 Miss.L.J. at 840.

Thus the mere fact that we have approved Section 402A, and even if we agree that the phrase "unreasonably dangerous" serves a useful purpose in predicting liability in this area, it does not follow that this language should be used in framing the issues for the jury's consideration. Should an ill-conceived design which exposes the user to the risk of harm entitle one injured by the product to recover? Should adequate warnings of the dangerous propensities of an article insulate one who suffers injuries from those propensities? When does the utility of a product outweigh the unavoidable danger it may pose? These are questions of law and their resolution depends upon social policy. Restated, the phrases "defective condition" and "unreasonably dangerous" as used in the Restatement formulation are terms of art invoked when *strict liability* is appropriate. It is a judicial function to decide whether, under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint. They do not fall within the orbit of a factual dispute which is properly assigned to the jury for resolution. A standard suggesting the existence of a "defect" if the article is unreasonably dangerous or not duly safe is inadequate to guide a lay jury in resolving these questions.

In this case we are called upon to determine when liability should attach in cases where a "bad design" is charged. Using the standard set forth in *Salvador v. Atlantic Boiler Co., supra,* we must look to whether the product is safe for its intended use. There, Mr. Justice Roberts, speaking for a unanimous Court said:

"Today . . . a manufacturer . . . is effectively the guarantor of his product's safety . . . . Our courts have determined that a manufacturer, by marketing and advertising his product, impliedly represents that

it is safe for its intended use. We have decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect."

*Salvador v. Atlantic Boiler Co.,* 457 Pa. at 32, 319 A.2d at 907.

Reflecting the same view, former Chief Justice Jones said in *Berkebile, supra:*

"The seller must provide with the product every element necessary to make it safe for use."

*Berkebile v. Brantley Helicopter Corp.,* 462 Pa. at 100, 337 A.2d at 902.

■■ For the term guarantor to have any meaning in this context the supplier must at least provide a product which is designed to make it safe for the intended use. Under this standard, in this type case, the jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use.[11] It is clear that the term "unreasonably dangerous" has no place in the instructions to a jury as to the question of "defect" in this type of case.[12] We therefore agree with

11. Under the facts of this appeal we need not consider when the risk of loss is placed upon the supplier in cases where an unavoidably unsafe product is involved or where there is an averment of inadequate or absence of warnings.

12. We believe that an adequate charge to the jury, one which expresses clearly and concisely the concept of "defect," while avoiding interjection of the "reasonable man" negligence terminology, is the jury instruction directed to the definition of a "defect," which was fashioned in large part by the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instructions, Civil Instruction Subcommittee:

"The [supplier] of a product is the guarantor of its safety. The product must, therefore, be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended] use. If you find that the product, at the time it left the defendant's control, lacked any element necessary to make it safe for [its intended] use or contained any condition that made it unsafe for [its intended] use, then

the court en banc that the use of the term "unreasonably dangerous" in the charge was misleading and that the appellee was entitled to a new trial.

Order of the Superior Court affirming the order of the court en banc is affirmed.

the product was defective, and the defendant is liable for all harm caused by such defect."
Pennsylvania Standard Jury Instruction 8.02 (Civil), Subcommittee Draft (June 6, 1976).