Diane **ROONEY** and Michael Rooney, Appellants,

v.

**FEDERAL PRESS COMPANY** and Positive Safety Manufacturing Co. d/b/a Possons Punch Press Co., Appellees.

No. 84–3282.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Oct. 2, 1984.

Decided Dec. 17, 1984.

Rehearing and Rehearing In Banc Denied Jan. 14, 1985.

James Hunter, III, Circuit Judge, filed opinion dissenting in part and concurring in part.

William T. Jorden, Jorden & White, Meadville, Pa., for appellants.

John M. Wolford, Russell S. Warner, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellee Federal Press Co.

James T. Marnen, Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., for appellee Positive Safety Mfg. Co.

Before ALDISERT, Chief Judge, and HUNTER and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this products liability case, the district court concluded that the manufacturer of a power press was not liable for injury to an operator caused by a modification to the machine made by its owner more than a year after purchase. We find no error in the district court's holding and will affirm the judgment in favor of the defendant.

Plaintiff Diane Rooney was injured in January 1980 during the course of her employment, when the ram of a power press dropped onto her hand. She brought suit under Section 402A of the Restatement (Second) of Torts alleging that the press manufactured by defendant Federal Press Company and the safety device made by co-defendant Positive Safety Manufacturing Company were defective. The jury found for Positive Safety but was unable to reach a verdict on the plaintiff's claim against Federal. After briefing and argument, the district court granted Federal's motion for judgment on the record.

Federal sold the press to the plaintiff's employer in 1966. At that time, the machine was equipped with a safety device that required the operator to have both hands on palm buttons to activate the ram. Only when both buttons were pressed, would the ram descend and strike material placed on the lower die. Because the buttons were located a distance from the point of contact, the operator's hands were away from the area where the ram dropped.

Federal also manufactured foot pedals which could be used to activate a press. The plaintiff's employer, however, did not purchase one of these pedals from Federal and did not advise that company of an intention to install that device. More than a year after purchase, the plaintiff's employer changed the use to which the press had been put and added a foot pedal switch.[1] The electrical wiring was modified so that either the foot pedal or the hand buttons could be used to operate the ram. Use of the foot pedal freed the operator's hands from their position of safety on the buttons, creating the danger of injury from the descending ram.

Recognizing the risk to the operators, the employer installed a "pull back" safety device that it had purchased from defendant Positive Safety in 1942 and that had been used on another power press since that time. The pull back includes glove-type bands which fit around the wrist and thumbs of the operator. These bands are connected mechanically to the ram. When the ram descends, the operator's hands are pulled away from the point of contact with the lower die. When adjusted correctly, the pull back will move the operator's hands seven to fourteen inches. If improperly adjusted, however, the pull back will allow the operator's hands to remain within the danger zone under the ram.

On the day of the accident, the plaintiff's supervisor assigned her to work on the press. Although she had operated power

1. Plaintiff did not introduce evidence and the record does not reveal the identity of the manufacturer of the foot pedal switch or its supplier.

presses before, this was the first time she had used a pull back device. The supervisor instructed plaintiff on the use of the press and showed her how to adjust and wear the pull back.

The morning passed uneventfully, but, when plaintiff returned to work after lunch, her hand was injured by the descending ram. Plaintiff testified that she recalled no details of the accident other than her hand being on the lower die. She had been using the pull back device, but the record does not establish whether it was properly adjusted.

The jury exonerated Positive Safety but was unable to agree on a verdict as to Federal.[2] After briefing and argument, the district court entered judgment in favor of Federal, concluding that there was no evidence that would allow the jurors to find against it. The court held that when the press left Federal's control, it had an adequate safety feature of two hand palm buttons and a sufficient safety warning. Thus, the machine "did not lack any element necessary to make it safe for its intended use and did not possess any feature that rendered it unsafe for the intended use."

On appeal, plaintiffs contend that Federal should have foreseen that a foot pedal would be used and consequently should have provided an appropriate safety device. They also argue that defendant failed to provide an adequate warning. Plaintiffs aver that both of these issues should be resolved by a jury and not the court.

Federal argues that since the danger was obvious and known to plaintiff, no further warning was necessary. It further contends that the press when delivered was properly equipped for its specific and intended use.

▪ The parties agree that in this diversity action the law of Pennsylvania controls, more particularly, Section 402A of the Restatement (Second) of Torts, as modi-

fied by *Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). As we have explained in an ever lengthening series of cases, a manufacturer has an obligation to make its products safe for their intended use. *See, e.g., Hammond v. International Harvester Co.*, 691 F.2d 646 (3d Cir.1982); *Heckman v. Federal Press Co.*, 587 F.2d 612 (3d Cir.1979); *Capasso v. Minster Machine Co., Inc.*, 532 F.2d 952 (3d Cir.1976).

This principle has been applied in several cases in which individuals were injured while using industrial machinery in the course of their employment. In *Heckman v. Federal Press* and *Capasso v. Minster Machine*, the employees won jury awards when their hands were injured by power presses similar to the one here. In both of those cases, the employers requested and the manufacturers supplied a foot operated switch.

On the other hand, in *Hanlon v. Cyril Bath Co.*, 541 F.2d 343 (3d Cir.1975), we held that the manufacturer was entitled to a directed verdict because the employer installed a foot switch after the press had been purchased. The plaintiff was injured when his foot inadvertently came in contact with the added electrical switch. In *Schreffler v. Birdsboro Corp.*, 490 F.2d 1148 (3d Cir.1974), we affirmed a directed verdict for the defendant where the employer-purchaser modified specially designed steel-making equipment after installation in its plant.

The case at hand falls between the two lines of authority. Our task in determining which category governs requires a closer examination of *Heckman, Capasso*, and *Hanlon*. Although the plaintiffs in those cases sustained their injuries in similar fashion on similar machines, there is a critical difference in the condition of the machines at the time they left the manufacturers' possession.

In both *Heckman* and *Capasso*, the power presses were not only designed to be

---

**2.** In a companion appeal, we issued a memorandum opinion affirming the judgment in favor of Positive Safety.

operated by a foot pedal, but were in fact delivered with that equipment. In each instance, the purchaser and manufacturer had discussed buying the foot switches as extra or optional equipment. In those circumstances, the manufacturer was on notice that the two hand button system would be bypassed and the machines would be operated using the additional feature. Consequently, the extent of the manufacturer's duty to provide protection for the operator raised questions for the jury.

By contrast, in *Hanlon,* some time after purchasing the press, the employer replaced the manual treadle with a more easily operated electrical foot switch. This court held that the substitution of a significantly different and much more sensitive starting device was a substantial change in the condition in which the press was sold. The employer had "removed a safeguard against accidental activation that had been incorporated in the original structural design and would have been adequate to prevent this accident." 541 F.2d at 346. Accordingly, the manufacturer was entitled to a directed verdict.

In *Schreffler,* we pointed out that after the manufacturer relinquished control, the equipment was altered substantially making unexpected use possible. 490 F.2d at 1153. In that case, the plaintiff failed to prove a critical element of his case—that the equipment was in the same condition, so far as relevant, on the day of the accident as it was at the time of sale.

In the appeal before us, the evidence shows that at the time of purchase and before installation of the foot pedal, the press was used in an operation where the material to be shaped was fed mechanically and was equipped with a fixed guard which denied an operator any access to the space between the dies. The two button device when added to the other safety features provided more than adequate protection. In an effort to adapt the machine to a different application and speed up the work, the employer added the foot pedal.

There is no evidence in the record to show that Federal was ever consulted about the modification or was even aware of it. Nor does the record reveal any untoward incident with the machine between the time of its modification in 1968 and occurrence of the accident in 1980.[3] Moreover, there was an interval of fourteen years between the date of sale and the accident, during which time the plaintiff's employer was in sole possession and control of the press.

■ Although Federal was aware that the machine could be modified for use by a foot pedal, we find no basis in this record for concluding that a jury could find that eventuality "was within the contemplation of the manufacturer at the sale date." *Capasso,* 532 F.2d at 955. As the Pennsylvania courts have held, § 402A "was not intended to make the [manufacturer] an insurer of all injuries caused by the product." A defect must be proved. *Azzarello,* 480 Pa. at 553, 391 A.2d at 1024. Plaintiff has failed to demonstrate the presence of one at the time the press left Federal's possession. The hazard which caused the plaintiff's injury was not created by the manufacturer but by the employer-purchaser after purchase.

■ There is no dispute in this case about the critical facts, and thus, the only issue is the legal significance of those facts. Consequently, because there was a post-delivery modification which constituted a substantial change in the press, we conclude that the district court did not err in holding that Federal was entitled to a judgment on the record. *See Schreffler,* 490 F.2d at 1154.[4]

---

**3.** An official of Federal testified that a machine which they manufacture is not complete until the purchaser installs the dies to meet its particular needs. Because the uses vary so widely and the dies differ substantially, he said that it is not possible to design safety devices in the original manufacture which will meet all uses which might be anticipated. In view of our disposition of this case, we need not pass on this defense.

**4.** We find no merit to the plaintiff's contention that Federal failed to provide an adequate warning. A plaque attached to the machine cau-

Accordingly, the judgment of the district court will be affirmed.

JAMES HUNTER, III, Circuit Judge, dissenting in part and concurring in part:

In this case, after the jury was unable to agree on Rooney's claim against Federal, the district court declared a mistrial. It then proceeded to hold as a matter of law that the power press was not defective because it left Federal's custody without the foot-pedal bypass of the palm button safety feature. In making this determination, the district court relied on *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020 (1978), which reserves to the court in a products liability case the question whether the product in question is "unreasonably dangerous," the predicate for imposition of strict liability under section 402A of the Restatement (Second) of Torts.

However, as the Pennsylvania Supreme Court made clear in *Azzarello*, that case does not change the fundamental allocation of questions of fact to juries. *Azzarello* reserves to courts only the policy determination whether, on the facts alleged by the plaintiff, imposition of strict liability would be appropriate. *See id.* at 558, 361 A.2d at 1026. The question whether a design defect exists, that is, whether the product "left the supplier's control lacking an element necessary to make it safe for its intended use," remains within the province of the jury. *See id.* at 559, 361 A.2d at 1027. *See also Hammond v. International Harvester Co.*, 691 F.2d 646, 650 (3d Cir.1982) (applying post-*Azzarello* Pennsylvania law); *Holloway v. J.B. Systems, Ltd.*, 609 F.2d 1069, 1072 n. 7 (3d Cir.1979) (same).

It is clear, therefore, that the district court, should not have arrogated a question of fact to itself. Nevertheless, the majority upholds the district court's result because it decides that the addition by Rooney's employer of the foot pedal to the power press constituted a "substantial modification" that, under section 402A(b) of the Restatement, insulates Federal from liability.

Under Pennsylvania law, only unforeseeable modifications in a product will insulate its manufacturer from strict products liability, and the question whether such a substantial change has been made is a factual issue to be determined by a jury. *See Heckman v. Federal Press Co.*, 587 F.2d 612, 616 (3d Cir.1979); *Cappasso v. Minster Machine Co.*, 532 F.2d 952, 955 (3d Cir.1976). *See also Merriweather v. E.W. Bliss Co.*, 636 F.2d 42, 44 (3d Cir.1980) (holding that the question whether a change in a product is an unforeseeable "substantial modification" remains within the province of the jury under post-*Azzarello* Pennsylvania law). Thus the majority's holding in this case depends upon its resolution of a question of fact, and is tenable only if the evidence was such that no reasonable juror could have found that the foot-pedal modification was foreseeable to Federal in 1966, when the press was sold to Rooney's employer.

The majority relies chiefly on the fact that Federal did not sell the foot pedal to Rooney's employer.[1] This fact seems scarcely relevant to the critical question of foreseeability, given the undisputed evidence that the press was designed to accept the foot-pedal modification, and that in 1966 and for some years thereafter Federal advertised and sold the by-pass foot pedal. Indeed, the majority concedes that "Feder-

---

tioned against operating the press unless it was properly guarded. In any event, the risk was patent and plaintiff was aware of it.

**1.** The majority finds this case distinguishable from *Capasso* and *Heckman* on this basis. It is true, as the opinion in *Capasso* pointed out, that a finding that a modification was foreseeable would be "underscored by the contemporaneous purchase of the foot pedal," 532 F.2d 952, but it

hardly follows, as the majority holds, that contemporaneous purchase of a modification is necessary to a finding that the modification was foreseeable. Indeed, it strains both logic and ordinary common sense to hold that no reasonable juror could find that a manufacturer could foresee that a product designed to accept a specific modification might be so modified after purchase.

al was aware that the machine could be modified for use by a foot pedal...." I fail to see how, in view of this, the majority is able to conclude that no basis exists in the record for a jury to find that the change was within Federal's contemplation at the time that it sold the press. I would remand for a new trial on the issue of whether the press was defectively designed.[2]

Accordingly, I respectfully dissent.

---

**2.** I concur in the majority's holding that judgment on the record in favor of Federal was appropriate on Rooney's failure-to-warn claim.