Thomas S. **BRANTNER** and Linda Brantner, his wife, Plaintiffs,

v.

**BLACK & DECKER MFG. CO., a/k/a Black & Decker (U.S., Inc.).**

Civ. A. No. 93–1J.

United States District Court, W.D. Pennsylvania.

Aug. 23, 1993.

Eric Zajac, Philadelphia, PA, for plaintiffs.

John Hall, Pietrogallo, Bosick & Gordon, Pittsburgh, PA, for defendant.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

Plaintiffs Thomas and Linda Brantner have filed a complaint alleging the standard trilogy of causes of action—strict liability, negligence, and breach of warranties—against a manufacturer, defendant Black & Decker. Before the court is defendant's motion for summary judgment on the strict liability causes of action, docket no. 20.

On April 5, 1990, Thomas Brantner (Brantner), age 50, had been working at the F.L. Smithe Company for approximately ten years. On that day, Brantner had drilled a ½″ hole in a 1½″–thick steel plate. While widening the hole to ⅝″, Brantner's right wrist was allegedly injured when his drill bit caught and caused the drill to twist in a counterclockwise direction.

There are several hotly contested factual issues in this matter, from the question whether the plaintiffs have located the drill that Brantner was actually using in light of the delay before plaintiffs sought legal attention and attempted to determine what drill Brantner had been using, to Brantner's alleged failure to seek to mitigate damages. For purposes of this motion, however, it is my function under Rule 56 and *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020, 1025–26 (1978) to determine "whether, under plaintiff's averment of facts, recovery would be justified[.]"

Black and Decker seeks summary judgment on three grounds: (1) the product was substantially altered after it left Black & Decker's hands in 1960; (2) the plaintiff assumed the risk of injury; and (3) the balancing required by *Azzarello* weighs against imposing liability on the manufacturer of this drill. I address only the first.

*Substantial change*

Section 402A of the Restatement (2d) of Torts provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without *substantial change* in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

(emphasis added).

The Restatement formulation of strict liability, adopted as law in Pennsylvania, *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853, 854 (1966), does not define "substantial change," *see* Restatement (2d) Torts § 402A, Comment p, nor address the related problem of the scope of liability for manufacturers of component parts, *see id.,* comment q. The liability of manufacturers of products, such as the Black & Decker drill in this matter, that are used in the workplace and by consumers with after-market changes in their components has been defined on a case by case basis. Defendants assert that there was a substantial change in the Black & Decker drill from its condition at point of sale in 1960 and the date of the accident.

Plaintiffs argue that the Black & Decker drill used by Brantner was not substantially changed because although there were alterations in the drill, they were foreseeable, and because they were not the cause of Brantner's injury.

*Summary Judgment*

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment "...

if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The requirement is that there be no *"genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). (emphasis in original).

A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under the substantive law applicable to the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514.

Once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, *see Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988), the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories, etc., in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

*Factual issues*

Plaintiffs allege Brantner was injured using a Black & Decker 1400rpm 115 volt handheld power drill originally equipped to be used with a ⅜″ chuck. Brantner testified that at the time he was injured, he was using a ½″ Jacobs chuck and a ⅜″ bit with the shank cut down to fit the chuck. Brantner depo., 99, 105, 114, 117. Although plaintiffs' counsel attempts to question whether the chuck and bit had been altered, *see* Plaintiffs' Memorandum, docket no. 32, at 7, plaintiff cannot use the equivocations of his own deposition to create a dispute of fact. *Townley v. Norfolk & Western Ry. Co.,* 887 F.2d 498, 501 (4th Cir.1989).

Plaintiffs assert that the modification, even if substantial, did not cause the injury and is, therefore, irrelevant. Plaintiffs focus on the

time-frame after the drill bit caught on the hole Brantner had drilled as he was trying to enlarge it, and contend that the post-sale alteration of the chuck and drill bit are irrelevant to the severity of Brantner's injury, since the motor in the drill would produce the same 15 foot-pounds of torque regardless of the size of the bit. Plaintiffs' Memorandum at 5; *id.*, Exhibit D, Kotler letter of July 20, 1993 at 2. Although it is clear that an alteration is only a substantial modification to the extent that it would have been a superseding cause of the injury, *Thompson v. Motch & Merryweather Machinery Co.*, 358 Pa.Super. 149, 516 A.2d 1226, 1229 (1986), plaintiffs' focus is too narrow. The happening of the accident cannot be compartmentalized into one portion as to which plaintiffs have favorable expert testimony, i.e., the feasibility of a design that would have mitigated the injury to Brantner, and another portion as to which their expert and the defendant's experts are unfavorable, i.e. the likelihood that this accident would have happened in the first place.

There is no question, even to a weekend do-it-yourselfer, that changing chucks and bits on a power drill can substantially alter its performance. Defendants' experts opine that using the larger chuck and bit greatly increased the probability that the drill would bind. *See* Defendant's Supplemental Pretrial Statement, docket no. 22, Saffell letter of July 2, 1993; Schwalje letter of June 24, 1993 at 2. Plaintiffs' expert agreed that changing chucks and bits "can influence the tendency of a tool to bind." Plaintiffs' Memorandum, Exhibit D, Kotler letter of July 20, 1993 at 2.[1]

Plaintiffs' argument, Plaintiffs' Memorandum at 6–7, that the advertisement that this model contained "extra chuck capacity" means that part of the intended use of the drill was to use larger chucks is plainly a strained, self-serving reading of Exhibit E. The advertisement for this drill, which plaintiffs do not quote fully, states "90% POWER INCREASE coupled with extra chuck capacity make this the perfect drill for general-

purpose, 'odd-job' work." In common understanding, this is not a statement that larger chucks can be attached to this drill, but rather a statement that this drill has greater chuck capacity than its competitors or predecessors. The same observation can be made about the claim of a 90% power increase. By plaintiffs' reasoning, an auxiliary power device that overloads the drill by up to 90% would also be an intended use.

There is some slight evidence that using larger chucks on the Black & Decker drill was foreseeable. *See* Kotler letter of July 20, 1993. Plaintiffs' expert conclusorily states that use of the larger chucks and bits is common practice, and gives as a sole supportive example the current availability of a domestic Black & Decker ½″ bit adapted to fit a ⅜″ chuck marketed for a ¼″ Black & Decker drill. Plaintiffs present no evidence that alteration of the drill Brantner was using was foreseeable as of 1960 when the product left the manufacturer's control.

*Foreseeable change*

■ The foreseeability of misuse or alteration of a product, in either case, is part of the analysis of a negligence action, not a products liability action. *See Griggs v. BIC Corp.*, 981 F.2d 1429, 1433 (3d Cir.1992) citing *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 900 (1975). In *Griggs*, the Court of Appeals soundly repudiated the argument raised by plaintiffs, whose child had been injured in a fire caused by a child's misuse of a disposable lighter manufactured by BIC, that because it was common knowledge that children misused disposable lighters, a lighter's "intended use" as that term is employed in the *Azzarello* standard encompassed the foreseeable misuse.

It must be acknowledged that there are several Pennsylvania Superior Court decisions which broadly state that alterations or misuses of a product are part of its intended use unless those alterations or misuses are not reasonably foreseeable. *See Sweitzer v. Dempster Systems*, 372 Pa.Super. 449, 539 A.2d 880, 882 (1988); *Eck v. Powermatic Houdaille*, 364 Pa.Super. 178, 527 A.2d 1012,

---

**1.** Additionally, drilling through a 1½″–thick steel plate may have been a task more than three times greater than the rated capacity of this drill.

*See* Plaintiffs' Memorandum, Exhibit E (Capacity: in steel .... up to ⅜″) (catalog description for model no. 490).

1018 (1987); *see also Burch v. Sears Roebuck and Co.,* 320 Pa.Super. 444, 467 A.2d 615, 619 (1983). However, even accepting plaintiffs' interpretation of these cases, this Court is bound by the Court of Appeals' and Pennsylvania Supreme Court's interpretation of Pennsylvania law and not by the Superior Court's. *See e.g. Williams v. Guzzardi,* 875 F.2d 46, 51 (3d Cir.1989) (discussing continuing viability of cause of action for intentional infliction of emotional distress).

*Griggs* is faithful to the Pennsylvania Supreme Court's consistent separation of the issues of negligence from those of strict liability, and its recognition that foreseeability has no place in the determination of a product defect. For instance, in *Jacobini v. V. & O. Press Co.,* 527 Pa. 32, 588 A.2d 476 (1991), the Supreme Court reversed the Superior Court and reinstated a directed verdict in favor of Danly Machine Corporation. Danly was sued on a theory of strict liability after an injury to a worker using a power press, because it was the manufacturer of a die set, a component part of the power press. The cause of the injury was the lack of a barrier guard on the power press, and the Superior Court had held that liability could be attributed to Danly on the basis that its die sets did not contain sufficient warnings that they should only be incorporated into power presses with barrier guards. The Supreme Court stated

> Danly cannot be expected to foresee every possible risk that might be associated with use of the completed product, the die, which is manufactured by another party, and to warn of dangers in using that completed product in yet another party's finished product, the power press. To recognize a potential for liability through such a chain of responsibility would carry the component part manufacturer's liability to an unwarranted and unreasonable extreme.

588 A.2d at 480.

The incorporation of Danly's products into assemblies by other manufacturers, possibly without barrier guards, was fully foreseeable under plaintiffs' interpretation of the Superior Court's precedents. Nevertheless, the Supreme Court refused to allow the component part manufacturer to be held liable.[2]

Two other Pennsylvania Supreme Court decisions in the failure-to-warn line of cases, *Mackowick v. Westinghouse Electric Corp.,* 525 Pa. 52, 575 A.2d 100 (1990), and *Sherk v. Daisy–Heddon,* 498 Pa. 594, 450 A.2d 615 (1982), are inexplicable if I accept plaintiffs' theory of imposing strict liability despite alteration of a product if the alteration is simply foreseeable.

*Sherk* presented the claim by the parents of a young boy killed when a playmate negligently pointed and fired an air rifle at the boy's head despite knowing that it was dangerous to do so. The Pennsylvania Supreme Court, again reversing the Superior Court and reinstating a verdict in favor of a defendant manufacturer, quoted Dean Prosser's landmark article, *The Fall of the Citadel,* 50 Minn.L.Rev. 791, 824 (1966):

> "[t]here appears to be no reason to doubt that strict liability has made no change in the rule, well settled in the negligence cases, that the *seller of the product is not to be held liable when the consumer makes an abnormal use* of it. Sometimes this has been put on the ground that the manufacturer has assumed responsibility only for normal uses; sometimes it has gone off on 'proximate cause.'"

450 A.2d at 618 (emphasis added) (footnote omitted in original). The number of accidental deaths caused by negligent childplay with firearms is a matter of public knowledge. Under the plaintiffs' "foreseeable use is equivalent to intended use" theory, therefore, the Supreme Court decided *Sherk* wrongly. The Court of Appeals in *Griggs* rejected that view of the law.

In *Mackowick,* another well-known case, the Supreme Court affirmed the *en banc*

---

**2.** In *Walton v. Avco. Corp.,* 530 Pa. 568, 610 A.2d 454 (1992), the Supreme Court again "fortified the theoretical dam between the notions of negligence and strict 'no fault' liability," 610 A.2d at 462, by rejecting the importation of negligence theories even into the apportionment of damages. *See also Lewis v. Coffing Hoist Division,* 515 Pa. 334, 528 A.2d 590 (1987) (evidence of compliance with industry standards injects negligence concepts into products liability action and is therefore inadmissible).

Superior Court's reversal of still another panel of the Superior Court which had ordered a retrial of a finding in favor of a defendant manufacturer. The plaintiff, an experienced electrician, was injured when he pointed a metal screwdriver into a live high voltage capacitor. The Supreme Court, addressing an issue not directly raised by the appeal, stated that the alleged failure-to-warn strict liability claim should never have been sent to the jury in the first place, 575 A.2d at 102, because the warning on the capacitor was adequate as a matter of law. In explicating this concept, the Supreme Court repeatedly referred to the concept of the intended user. *Id.* at 102–03. ("[W]arnings must be directed to the understanding of the *intended user.*"; "A warning … is sufficient if it adequately notifies the *intended user* …;" "A warning … was sufficient for the *intended user.*") (emphases added). By plaintiffs' reasoning, a neophyte injured in the same way as Mackowick would have a viable claim despite the warning, because the defendant not only foresaw such an eventuality, but took precautions against it. *See id.* at 103 n. 2. This is paradoxical, at the least.

Foreseeability, the Court of Appeals and the Pennsylvania Supreme Court have said again and again, has nothing to do with strict liability. If a manufacturer markets a defective product, it is liable despite the unforeseeability of that defect. *See Habecker v. Clark Equipment Co.*, 942 F.2d 210, 215 (3d Cir.1991) (foreseeability is the prime distinction between strict liability and negligence in design defect claims). If foreseeability is imported back into the concept of substantial change through plaintiff's theory of foreseeable alteration, then a manufacturer becomes an insurer of any person injured in an accident in which its product is used, and not, as the Pennsylvania Supreme Court has stated, "the guarantor of his products' safety." *Azzarello*, 391 A.2d at 1023, *quoting Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903, 907 (1974).

The resolution of this issue by *Griggs* was foreshadowed some years ago by Judge Weis

in *Rooney v. Federal Press Co.*, 751 F.2d 140 (3d Cir.1984). Judge Weis surveyed the extant cases "in which individuals were injured while using industrial machinery in the course of their employment." 751 F.2d at 142. Judge Weis noted that in the line of cases imposing liability on the manufacturer, the employers requested and the manufacturers supplied the allegedly defective safety feature, while in the precedents relieving the manufacturers of liability the employer had modified the equipment after delivery. Affirming the judgment by Judge Mencer of this Court in favor of a manufacturer of a power press, Judge Weis observed that there was no evidence that the manufacturer had been consulted about the modification or was aware of it, and that there was an interval of 14 years between the date of sale and the accident.[3] In the instant matter, there is similarly no evidence that Black & Decker had been consulted about or made aware of the use to which F.L. Smithe Co. put the drill in the 30 years after it was sold.

Clearly, the power press in *Rooney* could be modified and the manufacturer was necessarily aware of that possibility, but because that eventuality was not "within the contemplation of the manufacturer at the sale date," 751 F.2d at 143, *quoting Capasso v. Minster Machine Co., Inc.*, 532 F.2d 952, 955 (3d Cir.1976), the Court of Appeals held that the manufacturer was entitled to judgment in its favor.

The "within the contemplation of the manufacturer" formulation of *Rooney* and *Capasso* more precisely describes what *Eck* loosely phrases as foreseeable change. Substantial modification of a product encompasses those uses which are beyond the scope of the product's intended use when it leaves the manufacturer. If those capabilities contemplate use in different fashions, *see e.g. Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974), the manufacturer is strictly liable for any defects in the product when it is so used. The manufacturer is not, under *Azzarello, Rooney,* and *Griggs,* strictly

---

**3.** Judge Weis also observed that the machine had operated without incident for 12 years after the modification.

liable for alterations which, although not intended, are simply foreseeable.

To reach any other conclusion would not only disregard the Pennsylvania Supreme Court's definition of Pennsylvania law, but also launch this court on the trackless and boundless task of imposing freakish and uncontrollable liability on manufacturers. Judge-made law has responded to changes in the commercial and industrial world by moving from a doctrine of industry-protective *caveat emptor* to a consumer-solicitous doctrine of strict liability. *Griggs,* 981 F.2d at 1432. Judge-made law should similarly be hesitant to expand a manufacturer's liability for products sold in the workplace to employers who modify the equipment years after purchase simply to accomplish, in large part, the transfer of the responsibility for insuring against losses from the orderly and established worker's compensation system to a tort system which is frequently unpredictable. Summary judgment is entered in favor of Black & Decker on the plaintiffs' causes of action based on strict liability.