J-A33020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| MARK WEBB, AS ADMINISTRATOR FOR THE ESTATE OF SABINO WEBB, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| VOLVO CARS OF NORTH AMERICA, LLC, VOLVO CARS CORPORATION, GRACO CHILDREN'S PRODUCTS, INC. (D/B/T/A NEWELL RUBBERMAID, INC.), WILLIAM JULIAN, AND ANA (WEBB) SOARES | |
| Appellees | No. 1367 EDA 2014 |

Appeal from the Judgment Entered March 26, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 110500208

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 24, 2016**

Appellant, Mark Webb, as administrator for the estate of Sabino Webb, appeals from the March 26, 2014 judgment in favor of Appellees Volvo Cars of North America, LLC and Volvo Cars Corporation (collectively, "Volvo"), and Graco Children's Products, Inc. ("Graco," and collectively with Volvo, "Appellees").  We vacate and remand.

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

---

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] brought this action before this Court on various theories of liability including both negligence and strict product liability in an action that would best be described as a crashworthiness case. The action arose from a fatal automobile collision that occurred on May 4, 2009 between a 1997 Volvo Sedan and a Chrysler PT Cruiser at the intersection of Tacony Street and Fraley Street. The Additional Defendant, Ana (Webb) Soares, was traveling northbound on Tacony Street operating a 1997 Volvo 850 Sedan when she unfortunately attempted an unsafe left-hand turn across traffic onto Fraley Street, immediately into the path of an oncoming Chrysler PT Cruiser operated by Defendant William Julian. Her Volvo 850 was struck on the rear passenger side door by the Chrysler PT Cruiser. At the time of the accident, two-month-old Sabino Webb was strapped in a SnugRide car seat manufactured by [Graco]. The car seat had been placed in the passenger side rear seat of the 1997 Volvo 850 Sedan right at what became the point of impact beside the rear passenger side door.

[Appellant], Administrator of the Estate of his son, brought this action seeking monetary damages for the death of Sabino Webb on behalf of himself and the estate. Ana (Webb) Soares, the mother of Sabino Webb, was joined to the action as an additional defendant (at the time of the accident, Mrs. Webb was not yet married to [Appellant] and was known by her maiden name, "Ana Soares"). [Appellant] sued, among other named parties, [Volvo] and [Graco]. In the case against Volvo, he alleged that the 1997 four-door Volvo 850 Sedan was defective because [. . .] the Volvo 850 lacked rear door bars to prevent side-impact intrusion during side-impact collision. The primary allegation against Graco was that the SnugRide car seat should have been designed or manufactured with additional padding or Styrofoam in the headrest to absorb impact during collision.

This Court directed a verdict in favor of Defendant William Julian at the conclusion of all defense evidence. The Jury thereafter returned a verdict in favor of Volvo and Graco. Finally, the Jury found in favor of [Appellant] and against Additional Defendant Ana (Soares) Webb.

Trial Court Opinion, 11/10/2014, at 1-2.

A jury trial commenced on November 4, 2013 and concluded on November 15, 2013. At the close of evidence, the trial court directed a verdict in favor of defendant William Julian and entered nonsuit on Appellant's negligence and deceptive trade practices causes of action against Appellees. Appellant has not appealed those decisions. On November 15, 2013, the jury entered a defense verdict on Appellant's strict products liability causes of action against Appellees. Appellant filed post-trial motions on November 25, 2013. The trial court heard argument on the post-trial motions on March 20, 2014, and entered an order denying relief on March 24, 2014. The verdict was reduced to judgment on March 26, 2014. This timely appeal followed. Appellant raises seven issues for our review:

1. Whether it was reversible error for the Court to instruct the jury that federal standards were relevant after the Trial Court dismissed all negligence claims from the case and only strict product liability claims remained in front of the jury.

2. Whether, per the [**Passarello v. Grumbine**, 87 A.3d 285 (Pa. 2014)] decision of the Supreme Court, Appellees exploited the incorrect federal standard jury instruction during closing arguments magnifying the Court's initial error and requiring a new trial.

3. Whether Appellant's expert Dr. David Renfroe's rebuttal FMVSS 214 testimony and testing was improperly precluded by the Trial Court because the Court mistakenly assumed only the U.S. Government could perform FMVSS testing.

4. Whether it was error for the Court to preclude Appellant from using Volvo's own highly relevant advertising material to impeach the credibility of Volvo's corporate designee.

5. Whether the Court improperly precluded Appellant from calling Volvo's corporate designees as if on direct, thereby arbitrarily dictating to Appellant what witnesses he could call in his case in chief.

6. Whether it was reversible error for the Court to allow unqualified defense experts to speculate that the car accident in question was not survivable for the deceased.

7. Whether the Court improperly kept defendant Ana Webb in the case after she had no reason to be in the case.

Appellant's Brief at 10.

Appellant's first assertion of error challenges the propriety of one of the trial court's jury instructions.[1]   As noted, Appellant proceeded against

_____

[1]  The following strictures govern our review:

Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case.  Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue.  Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.

The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous.  We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

*(Footnote Continued Next Page)*

Appellees on negligence and strict products liability causes of action. The record therefore contains extensive evidence relevant to all of Appellant's causes of action, including evidence of the involved Volvo 850's (the "Involved Automobile") and the Graco Car Seat's (the "Car Seat") compliance with Federal Motor Vehicle Safety Standards ("FMVSS").[2] Appellant argues the FMVSS evidence was relevant only to his negligence causes of action, and that the trial court should have instructed the jury to disregard that evidence given its entry of nonsuit on all but the strict products liability causes of action. Appellant cites *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 547 (Pa. Super. 2009), *appeal denied*, 989 A.2d 817 (Pa. 2010), and *Lewis v. Coffing Hoist Div., Duff Norton Co., Inc.*, 528 A.2d 590, 593-94 (Pa. 1987), for the proposition that evidence of a product's compliance with government standards is not relevant to a strict products liability claim.

Before we turn to the merits of this issue, we must address Appellees' argument that Appellant failed to preserve it. To preserve a challenge to a jury instruction, a party must lodge a timely objection. We have held that a

*(Footnote Continued)* ───────────────

*Czimmer v. Janssen Pharm., Inc.*, 122 A.3d 1043, 1052 (Pa. Super. 2015).

[2] Appellant filed a pretrial motion *in limine* to exclude all evidence of the Appellees' products' compliance with government regulations. The trial court denied that motion, concluding such evidence was relevant to the negligence claims.

trial court's ruling against a jury charge will preserve the issue for review. *Faherty v. Gracias*, 874 A.2d 1239, 1249 (Pa. Super. 2005). If the trial court rules against a proposed jury charge, the party need not take exception to the charge under Pa.R.C.P. No. 227(b). *Id.*

Prior to the charging conference, Appellant submitted a proposed instruction:

> You have heard evidence that Volvo and Graco's products were compliant with testing required by the Federal Motor Vehicle Safety Standards. The purpose of the Federal Motor Vehicle Safety Standards is to establish minimum performance standards for automotive safety; they do not establish the standard of conduct required under the common law. **You may not find for Volvo or Graco simply because their products passed Federal Motor Vehicle Safety Standards.**

Appellant's Second Amended Proposed Jury Instructions, 11/11/2013, at 5 (emphasis added; footnotes omitted). The record indicates that the trial court entered nonsuit on Appellant's negligence claims after Appellant submitted this charge, but prior to the charging conference.

The parties debated Appellant's proposed instruction at the November 14, 2013 charging conference. The debate was not a model of clarity. Appellant confirmed his belief that the final sentence of the proposed charge was "standard Pennsylvania law." N.T. Trial, 11/14/2013, at 152. Appellant did so despite the trial court's entry of nonsuit on the negligence claims prior to the charging conference. Appellees quote Appellant's statement in support of their waiver argument.

Later, however, Appellant clearly argued that government standards were not relevant in a strict products liability claim:

> [Graco's Counsel]: Your Honor, though, I think the law is that they can consider it in terms of whether or not the product is defective.
>
> THE COURT: Of course, but that's what the instruction says.
>
> [Graco's Counsel]: Well, it doesn't say that. It just says that there's evidence of compliance, the purpose is to establish a minimum performance. There's nothing in here about, if the performance is met that's evidence of lack of defect, but not presumptive evidence.
>
> THE COURT: Why don't we include that in then?
>
> [Appellant's Counsel]: Wait, Your Honor, we can't because under **Gaudio** federal standards should be completely out with regard to under strict liability.
>
> THE COURT: That's not what **Gaudio** says.
>
> [Appellant's Counsel]: I believe it does, Your Honor. It precluded reference entirely to federal standards.
>
> THE COURT: No, I have it right here. It doesn't say it can't be mentioned, it says you can't use it to prove it. As I understand, it's simple evidence to consider.
>
> [Graco's Counsel]: Right, it's evidence to consider if it's non-defective.

N.T. Trial, 11/14/2013, at 152-53.

Thus, it appears Appellees argued for a phrasing of the jury instruction more favorable to their defense. The trial court concluded by stating its understanding of the law and offering a compromise:

> THE COURT: And that is, frankly, if it's raised by the plaintiff, the defendant in their case in chief can't introduce it,

- 7 -

but it can be used as evidence if it's raised by the plaintiff and it was raised by the plaintiff.

So here's what I'd like – can we come up with some language that you all will agree with for this instruction compliance with governmental standards because everyone agrees that just because something meets the minimum standard doesn't mean that you still can't find for the plaintiff?

[Graco's Counsel]: I would suggest something to the effect of, You may consider evidence of compliance with the standard in your determination of whether or not the products are defective. However, you may not find for Volvo or Graco simply because their products passed the standard.

THE COURT: I don't think anyone disagrees with that.

[Appellant's Counsel]: Based on discussions, that's fine.

THE COURT: Resubmit.

*Id.* at 153-54. Appellees rely on the trial court's apparent belief that it reached a compromise, and Appellant's statement, "that's fine," to support their waiver argument.

The following day, immediately prior to the jury charge, the following exchange occurred regarding Appellant's revised proposed instruction:

[Appellant's Counsel]: And then our last one is the Government compliance instruction. We talked about this yesterday, I think Your Honor pulled out half of one of our sentences, and I don't know job [sic] if we reached it.

THE COURT: I don't have it. Unfortunately, I had so much paper here.

[Appellant's Counsel]: Second paragraph on there, and I think the issue when it was finally resolved is, Graco, Volvo produced language that it's relevant, I think to the design, but I am not sure what their language was.

THE COURT: Yes, **I think you indicated it should not come in, at all.**

- 8 -

[Appellant's Counsel]: **Yes, Your Honor ruled on that.**

THE COURT: **Right.**

[. . .]

THE COURT: The thing is, if we don't have the negligence charge we could have avoided the Federal standards altogether, right?

[Appellant's Counsel]: Yes, Your Honor.

THE COURT: And the case would have been three days shorter.

[Appellant's Counsel]: Likely.

N.T., 11/15/2013, at 37-38 (emphasis added).

The trial court charged the jury as follows:

Jurors, you have heard evidence that Volvo and Graco products were compliant with testing required by the Federal Motor Vehicle Safety Standard. The purpose of the Federal Motor Vehicle Safety Standard is to establish minimal performance standards for automotive safety. You may not find for Volvo or Graco simply because their products passed several motor vehicle safety standards.

*Id.* at 182.

In light of all of the foregoing, we conclude Appellant sufficiently preserved his objection in accord with *Faherty*. During the November 14, 2013 charging conference, which was Appellant's first opportunity to address the jury charge after the nonsuit on the negligence claims, Appellant argued the FMVSS evidence was no longer relevant. The record of the November 15, 2013 conference confirms that the trial court understood Appellant's objection to FMVSS evidence, but chose to permit the jury to consider it.

Appellant's counsel's comments at the November 15, 2013 conference confirm that Appellant submitted an instruction he believed was in accord with the trial court's ruling of one day earlier. We conclude that Appellant sufficiently preserved this issue for appellate review. We now turn to the merits.

Given the prevailing precedent at the time of trial, the trial court plainly erred in permitting the jury to consider the FMVSS evidence in connection with Appellant's strict product liability claims. Evidence of a product's compliance with government standards is irrelevant and inadmissible in a strict products liability action under section 402A of the Restatement (Second) of Torts.[3]  *Gaudio*, 976 A.2d at 543. For that

_____

[3]  Section 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and

*(Footnote Continued Next Page)*

proposition, **Gaudio** (like the instant matter, a crashworthiness case) relied on our Supreme Court's opinion in **Lewis**. In **Lewis**, the Supreme Court explained, "[N]egligence concepts have no place in a case based on strict liability." **Lewis**, 528 A.2d at 593. The **Lewis** court further reasoned that evidence of industry standards in a defective design case "go to the reasonableness of the [manufacturer's] conduct in making its design choice." **Id.** at 594. "[S]uch evidence would have created a strong likelihood of diverting the jury's attention from the [product] to the reasonableness of the [manufacturer's] conduct in choosing its design." **Id.**

Lewis, in turn, relied on **Azzarello v. Black Bros. Co.**, 391 A.2d 1020 (Pa. 1978), *overruled*, **Tincher v. Omega Flex, Inc.**, 104 A.3d 328 (Pa. 2014). The **Lewis** Court summarized **Azzarello** as follows:

> Besides holding that a product is defective when it leaves the suppliers' control lacking any element necessary to make it safe for its intended use, we also concluded, if not expressly, then certainly by clear implication, that negligence concepts have no place in a case based on strict liability.

**Lewis**, 528 A.2d at 593. **Lewis** also cited with approval to **Lenhardt v. Ford Motor Co.**, 683 P.2d 1097 (Wash. 1984): "The **Lenhardt** Court also observed that if a manufacturer's product has design attributes which make

_____
*(Footnote Continued)*

> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

it unsafe for its intended use, there is no relevance in the fact that such a design is widespread in the industry." *Id.* at 594. Absent further development in this area of law, a brief consideration of *Gaudio* and *Lewis* would be the end of the matter. The FMVSS evidence was inadmissible in strict liability claims under *Gaudio* and *Lewis*, and strict liability claims were all that remained when the trial court submitted the case to the jury.

We must now consider whether our Supreme Court's recent opinion in *Tincher*, specifically its overruling of *Azzarello*, affects the instant case. Appellees argue that *Tincher*, by implication, overruled the prohibition of industry or government standards evidence in a strict liability design defect case. Appellant and Amicus[4] argue that *Gaudio* and *Lewis* remain good law after *Tincher*. In *Tincher*, the plaintiffs sued the defendant manufacturer in negligence and strict liability alleging, among other things, defectively designed corrugated steel tubing. *Tincher*, 104 A.3d at 335-36. The plaintiffs alleged the steel tubing, which delivered natural gas to a gas fireplace in their home, melted after a lighting strike and ignited the natural gas inside. *Id.* The resulting fire caused significant damage to the plaintiff's home and personal property. *Id.* Prior to trial, the defendant filed a motion *in limine* asking the trial court to apply Sections 1 and 2 of the Restatement

---

[4] This Court granted leave to the Pennsylvania Association for Justice to file an *Amicus Curiae* brief.

(Third) of Torts[5] to plaintiffs' strict liability claim. *Id.* at 336. The defendant argued, in accord with the Third Restatement, that plaintiff had the burden to prove an alternate, safer design. *Id.* at 341. The defendant argued that the Third Restatement makes foreseeability of harm relevant to a strict

---

[5] Section One provides:

> One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect.

Restatement (Third) of Torts: Prod. Liab. § 1 (1998).

Section Two provides:

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:

> (a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

> (b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

> (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Prod. Liab. § 2 (1998).

products liability claim.  *Id.* at 342-43.  In other words, the defendant believed the reasonableness of its conduct must inform the analysis of the strict products liability claim against it.  *Id.* at 344.  Under *Azzarello*, the trial court must make a threshold determination of whether a product is in an unreasonably dangerous defective condition.  *Id.* at 367.  The jury determines the veracity of the factual allegations in the plaintiff's complaint. *Id.*

The *Tincher* Court noted that Section 402A of the Second Restatement is not a comfortable fit for design defect claims.  *Id.* at 371. Section 402A relieves plaintiffs of the burden of proving the absence of due care during the manufacturing process.  *Id.*  In design cases, however, "the character of the product and the conduct of the manufacturer are largely inseparable."  *Id.* at 371 (quoting *Phillips v. Crickett Lighters*, 841 A.2d 1000, 1015 (Pa. 2003) (Saylor, J. concurring)).  The *Tincher* Court overruled *Azzarello* because it is too difficult, in practice, to separate negligence from strict liability.  *Id.* at 376.  Instead, the Supreme Court devised a test whereby the plaintiff must provide proof, "in the alternative, either of the ordinary consumer's expectations or of the risk-utility of a product."  *Id.* at 401.  The risk-utility standard is derived from negligence concepts.  *Id.* at 403.  Other states adopting the consumer expectations/risk-utility standards have shifted the burden of proof to the defendant in the latter.  *Id.* at 408 (citing *Barker v. Lull Eng'g Co.*, 573

P.2d 443, 445 (Cal. 1978)). That is, if the plaintiff alleges a strict liability cause of action based on the risk-utility standard, the defendant bears the burdens of production and persuasion to prove the product in question is not defective in design. *Id.* The Supreme Court declined to address whether the burden-shifting rule would apply in Pennsylvania. *Id.* at 409.

The *Tincher* Court also declined to address the retroactive effect of its holding. The two questions before the Supreme Court were (1) whether to adopt the Restatement (Third) of Torts for products liability claims, and (2) whether the adoption of the Restatement should apply retroactively. Answering the first question in the negative, the Supreme Court declined to address the second. The Supreme Court ruled that the defendant was entitled to the benefit of the Court's overruling of *Azzarello*, since they presented that argument to the trial court and preserved it on appeal. *Id.* at 410. The Supreme Court did not address whether the defendant was entitled to judgment notwithstanding the verdict, a new trial, or other relief. *Id.*

To summarize, *Azzarello*, with its strict prohibition on introducing negligence concepts into strict products liability claims, is no longer the law in Pennsylvania. The rule presently at issue—the prohibition of government or industry standards evidence in a strict products liability case—clearly has its genesis in the now-defunct *Azzarello* regime. The *Lewis* and *Gaudio* Courts both relied primarily on *Azzarello* to support the preclusion of

government or industry standards evidence, because it introduces negligence concepts into a strict liability claim. According to Appellees, it follows that the trial court did not err in permitting the jury to consider the FMVSS evidence in connection with Appellant's strict liability claims. Appellant and *Amicus* note that the **Tincher** Court did not make its holding retroactive, and that **Tincher** cited **Lewis** and **Gaudio** but did not overrule either case. Thus, Appellant and *Amicus* argue that **Lewis** and **Gaudio** remain binding.

We conclude that the overruling of **Azzarello** does not provide this panel with a sufficient basis for disregarding the evidentiary rule expressed in **Lewis** and **Gaudio**. While it is clear after **Tincher** that the firm division between strict liability and negligence concepts no longer exists, it is not clear that the prohibition on evidence of government or industry standards no longer applies. **Lewis**, in particular, noted that a defective design could be widespread in an industry. **Lewis**, 528 A.2d at 594. The **Tincher** opinion does not undermine that rationale for excluding governmental or industry standards evidence. Furthermore, **Tincher** expressed two theories of strict products liability—consumer expectations and risk-utility. It is possible that government/industry standards evidence could be admissible under both theories, one and not the other, or neither. It is also possible that the admissibility of such evidence will depend upon the circumstances of a case. The **Tincher** Court noted the possibility of shifting the burden of

production and persuasion to the defendant under the risk-utility theory. This burden shift, if it becomes law, may provide defendants a basis to advocate for the admissibility of government or industry standards evidence in risk-utility cases.

These contingencies illustrate that **Tincher** will affect every stage of future products liability cases. Post-**Tincher**, parties must tailor their pleadings, discovery, and trial strategy to one or both of the new theories of liability. We believe the continued vitality of the prohibition on government and industry standards evidence is a question best addressed in a post-**Tincher** case.

We note that here, unlike in **Tincher**, Appellees were not advocating for the overruling of binding precedent. Appellees' arguments, and the trial court's decision, rest on a misunderstanding of those cases, and/or an erroneous belief that Appellant's negligence causes of action opened the door for the admissibility of FMVSS evidence despite the trial court's entry of nonsuit on the negligence claims. Appellant, in bringing both negligence and strict liability claims, did not open the door to FMVSS evidence in the strict liability claims. The FMVSS evidence came in because it was relevant to the negligence claims. Perhaps Appellant risked jury confusion in the event all of his claims survived to be decided by a jury, or perhaps not. Regardless, that was a strategic choice for Appellant to make. **See Tincher**, 104 A.3d at 406 ("[T]he plaintiff is the master of the claim in the first instance."). After

nonsuiting the negligence claims, the trial court could and should have instructed the jury to disregard the FMVSS evidence. We are unable to conclude, given the complexity of this case and the prominence of the FMVSS evidence, that the trial court's error was harmless. The trial court's erroneous jury instruction requires a new trial.

We address Appellant's remaining assertions of error to the extent they may be relevant on remand. Appellant's third assertion of error is that the trial court improperly excluded expert rebuttal testimony. Appellant sought to have his expert, Dr. David Renfroe ("Dr. Renfroe"), testify that he replicated the FMVSS 214 testing and the Volvo failed it. Appellant purportedly offered this evidence as rebuttal evidence, but the trial court refused to admit it, concluding it was an untimely addition to Dr. Renfroe's expert report. Given our conclusion that the FMVSS evidence is not relevant to Appellant's remaining strict liability claims, this issue is moot.

Appellant's fourth argument is that the trial court erred in refusing to admit into evidence various Volvo advertisements touting the safety of several Volvo models other than the Volvo 850. The excluded advertisements reflect that Volvo's 960 model contained rear door safety bars, as the Volvo 850 shoud have, according to Appellant. The advertisements touted the door bars as safety enhancements. Admission or exclusion of evidence rests within the sound discretion of the trial court, and we will not reverse the court absent and abuse of discretion or error of law.

***McManamon v. Washko***, 908 A.2d 1259, 1268 (Pa. Super 2006), *appeal denied*, 921 A.2d 497 (Pa. 2007).

The trial court permitted testimony on the issue, but excluded the advertisements. Volvo witnesses testified that the bars enhanced the safety of the Volvo 960 but would have posed dangers in the Volvo 850. Thus, the trial court permitted Appellant to establish, through examination of Volvo personnel, Volvo's belief that the rear door bars on the Volvo 960 enhanced its safety. Admission of an advertisement stating the same thing would have been cumulative. ***See*** Pa.R.E. 403 (relevant evidence may be excluded if it is needlessly cumulative). We discern no abuse of discretion in excluding the advertisements from evidence.

Next, Appellant argues the trial court erred in quashing a subpoena issued to several Volvo witnesses. Appellant sought permission to call the subject witnesses and examine them during his case-in-chief. Volvo filed a motion to quash the subpoena. Our review of the record indicates that the trial court denied Volvo's motion as moot during argument of the parties' motions in *limine*. N.T. Motions, 11/4/2013, at 49. Subsequently, it appears Appellant agreed to wait until Volvo's case-in-chief to examine the witnesses in question. N.T. Trial, 11/7/2013, at 5-6. Several of the witnesses were international and were not scheduled to arrive until the following week. ***Id.*** Under the Rules of Appellate Procedure, the appealing party bears the burden of informing this Court of the place of preservation of

an issue presented on appeal. Pa.R.A.P. 2117(c). We are unable to discern from the record whether Appellant properly preserved this issue. The trial court deemed Volvo's motion to quash as moot, and Appellant apparently agreed that cross examination of Volvo's witnesses would be satisfactory. Were we to reach the merits of this issue, we would find it lacking in merit. As the trial court observed, the evidence Appellant seeks through the subpoena would have been cumulative of evidence Appellant garnered from the witnesses Volvo produced at trial.

Next, Appellant argues the trial court erred in permitting Appellees' expert witnesses to testify that the victim would not have survived the accident even with rear door bars in the Volvo 850 or additional head restraint padding in the Car Seat. We observe:

> Whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court. It is well settled in Pennsylvania that the standard for qualification of an expert witness is a liberal one. When determining whether a witness is qualified as an expert the court is to examine whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation.

*Wexler v. Hecht*, 847 A.2d 95, 98-99 (Pa. Super. 2004), *affirmed*, 928 A.2d 973 (Pa. 2007)

Volvo presented the expert testimony of Deborah R. Marth, and Graco presented the expert testimony of Dr. Catherine Corrigan, both of whom are experts in biomechanics. Appellant argues that their opinions on survivability went beyond the scope of their expert qualifications, because

they are not medical experts. We disagree. Dr. Marth testified that her education included, among other things, a doctorate in biomedical engineering. N.T. Trial, 11/13/14 (morning session), at 69. She described biomedical engineering as the "study of the human body in motion, and how accidents or crashes can occur, and how injuries can be inflicted upon them." *Id.* Dr. Marth testified that the addition of a door bar in the Involved Vehicle would not have reduced or mitigated the victim's injury. *Id.* at 90.

Dr. Corrigan testified that "[t]he field of biomechanics is the applications of principles of mechanical engineering to the human body. So I analyze how forces create movement, and how forces create injury." N.T. Trial, 11/14/13 (morning session), at 13. "[T]he primary focus of the area of biomechanics is understanding from a physics perspective exactly how the injuries occur." *Id.*[6] Ultimately, Dr. Corrigan testified that additional padding in the Car Seat head restraint would not have reduced the force to the victim's head. *Id.* at 57.

We discern no merit in Appellant's argument. Neither witness offered medical testimony regarding the cause of the victim's death. Rather, they offered their opinions on the forces that caused the victim's injuries—a subject well within their areas of expertise. Both experts testified that

---

[6] We observe that Appellant did not object to the qualifications of either witness.

Appellant's proposed alternate designs would not have reduced the forces that caused the victim's injuries. The trial court did not abuse its discretion in permitting this testimony. **See, e.g., Pa. Trust Co. v. Dorel Juvenile Grp., Inc.**, 851 F.Supp.2d 831, 838-39 (E.D.Pa. 2011) (biomechanical engineer qualified to testify as to the cause of injuries in a car accident; expert identifying the cause of an injury need not be a medical doctor).

Finally, Appellant argues the trial court erred in declining to enter a directed verdict in favor of additional defendant Ana Webb, thereby leaving her on the verdict slip. As noted above, Ana Webb was the victim's mother and the driver of the Involved Vehicle. Defendant William Julian and Appellees filed cross claims against Ana Webb for negligence. Appellant argues Ana Webb should have been dismissed from the case after the trial court directed a verdict in favor of Julian and entered nonsuit on Appellant's negligence claims against Appellees. Appellant argues the trial court erred in submitting a verdict slip to the jury asking whether Ana Webb's conduct contributed to the victim's injuries, because the Appellant's only remaining causes of action sounded in strict liability against Appellees. Appellant argues this error entitles him to a new trial. Volvo argues the trial court's action was proper because Appellees were entitled to contribution from Ana Webb in the event of a verdict against them.

The record reveals that Appellant failed to preserve this issue in his post-trial motion. Appellant referenced the issue in a single sentence in the

brief in support of his post-trial motion. We have held that omitting an issue from a post-trial motion but referencing it in a subsequent brief results in waiver. ***Empire Trucking Co. v. Reading Anthracite Coal Co.***, 71 A.3d 923, 932 (Pa. Super. 2013). "Appellant first raised the issue in its brief in support of the post-trial motion. Pursuant to Pa.R.C.P. [No.] 227.1,[7] grounds for post-trial relief must be set forth in a post-trial motion. If not, those grounds are waived." ***Id.***

In summary, we have concluded that Appellant is entitled to a new trial on his strict liability claims. We have concluded that Appellant's remaining arguments are moot, waived, or lacking in merit. We therefore vacate the judgment and remand for further proceedings consistent with this memorandum.

Judgment vacated. Case remanded. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Strassburger files a concurring memorandum.

---

[7] "[P]ost-trial relief shall not be granted unless the grounds therefor [. . .] are specified in the motion." Pa.R.C.P. No. 227.1(b)(2).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/24/2016</u>