J-A12014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIC URBIETA AND KRISTI URBIETA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ALL-AMERICAN HOSE, LLC; DAVIS STANDARD CORPORATION; HAGERTY PRECISION TOOL, INC.; FASTENAL COMPANY; ERIE COMMERCE, LLC; LEWCO, INC.; LEWCO INTERNATIONAL, LLC; PERFORMANCE FIBERS, INC.; T/D/B/A DURAFIBER TECHNOLOGIES; PERFORMANCE FIBERS OPERATIONS, INC., T/D/B/A DURAFIBER TECHNOLOGIES; DURAFIBER TECHNOLOGIES, | |
| Appellees | No. 1224 WDA 2018 |

Appeal from the Order Entered July 31, 2018
In the Court of Common Pleas of Erie County
Civil Division at No(s): 11413-2015

BEFORE: BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 26, 2019**

Appellants, Eric Urbieta and Kristi Urbieta, appeal from the trial court's July 31, 2018 order, granting summary judgment in favor of Appellees, All-American Hose, LLC ("AAH"); Davis Standard Corporation ("Davis"); Hagerty Precision Tool, Inc. ("Hagerty"); Fastenal Company ("Fastenal"); Erie

Commerce, LLC;[1] Lewco, Inc.; Lewco International, LLC;[2] Performance Fibers, Inc., t/d/b/a Durafiber Technologies; Performance Fibers Operations, Inc., t/d/b/a Durafiber Technologies; and Durafiber Technologies.[3] We affirm.

The trial court aptly summarized the background of this case as follows:

[Mr.] Urbieta … suffered a traumatic brain and right shoulder injury when he was struck by an industrial hose on May 3, 2013, while working at [AAH] as a temporary employee supplied by Remedy Intelligent Staffing, Inc. ("Remedy"). At the time of the accident, [Mr.] Urbieta was working as a hose "normalizer." Normalization is a quality control process in which high pressure steam is injected into the hose, made by [AAH], to test it for leaks. [Mr.] Urbieta was responsible for placing an adapter inside one end of a hose. He then had to clamp the hose fabric between the adapt[e]r and a "bell and cable system." [Hagerty] manufactured the adapt[e]r using [AAH's] specifications. The bell and cable system consisted of various parts, including nuts made by [Fastenal]. During testing, the hose was stretched out on a non-motorized roller table made by [Lewco]. The table was equipped with a safety strap designed and installed by [AAH].

On the day of the accident, before steam was injected into the hose as part of the normalization process, [Mr.] Urbieta was tasked with inserting the adapt[e]r into the hose and clamping the bell and cable system around [the] adapt[e]r and hose end. [Mr.] Urbieta found a stripped screw or bolt on the bell and cable system. Instead of obtaining a new screw or bolt, the maintenance man, Mike Sammons, drove to [AAH's] Union City [p]lant and retrieved a new bell and cable system. This bell and

---

[1] Based on our review of the docket, it appears that a stipulation of voluntary discontinuance of Erie Commerce, LLC, with prejudice, was entered on December 5, 2016.

[2] We refer to Lewco, Inc., and Lewco International, LLC, collectively as "Lewco."

[3] We refer to Performance Fibers, Inc., t/d/b/a Durafiber Technologies; Performance Fibers Operations, Inc., t/d/b/a Durafiber Technologies; and Durafiber Technologies collectively as "Durafiber."

cable system was smaller than the ones provided at the Erie plant because the hoses manufactured in Union City were smaller. It is unknown whether [Mr.] Urbieta was aware of the difference in sizes. [Mr.] Urbieta affixed the new bell and cable system. The hose was filled with pressurized steam and the[n,] suddenly, the bell and cable system and the adapt[e]r blew off the end of the hose. The hose, powered by the steam coursing through it, whipped around striking [Mr.] Urbieta and violently throwing him across the room. [Mr.] Urbieta sustained serious injuries.

Prior to the accident, [Mr.] Urbieta had only been in the normalizing position for less than a week. He was a temporary employee hired out by Remedy on a "temp-to-hire" basis. Remedy reviewed [Mr.] Urbieta's work history, training and educational background and classified him in order to place him with an appropriate employer. Remedy forwarded [Mr.] Urbieta's résumé to its client, [AAH], for its consideration. [AAH] selected [Mr.] Urbieta, among others, to work in its Erie plant. [Mr.] Urbieta reported directly to [AAH] each work day. No one from Remedy accompanied new hires to [AAH]. No one from Remedy was present at the [AAH] job site. [Mr.] Urbieta received all work assigned for [AAH]. [Mr.] Urbieta began his employment at [AAH] doing maintenance work. On approximately April 25, 2013, [AAH] assigned [Mr.] Urbieta to work as a hose normalizer. He was trained and directed on how to do the job solely by representatives of [AAH]. [AAH] provided [Mr.] Urbieta with all equipment necessary for the job including gloves, eye protection, hearing protection and tools. [AHH] had the power to promote or reject [Mr.] Urbieta as an employee. If unsatisfied with [Mr.] Urbieta's work, [AAH] could return him to Remedy. [AAH] also had the power to hire [Mr.] Urbieta to full[-]time status.

Procedurally, [the Urbietas] initially brought suit against [AAH] only[] at Docket No. 10646-2015. They subsequently filed a second lawsuit against [AAH] and the other [Appellees] at the above[-]noted Docket No. 11413-2015. Pursuant to a stipulation with [AAH], [the Urbietas] elected to abandon the action at Docket No. 10646-2015 in favor of pursuing this case. [The Urbietas'] claims sound in negligence, strict liability, breach of warranty, and loss of consortium. [The Urbietas] have filed two expert reports with their pretrial narratives. Discovery is now closed and each [remaining Appellee] has filed a Motion for Summary Judgment. []Hagerty joined in [the Urbietas'] Responses in Opposition to [AAH]'s Motion for Summary Judgment under the theory that the

adapt[e]r Hagerty manufactured was designed by [AAH] and subsequently altered by [AAH].

***

[AAH] investigated the accident and did not find that any of the component parts of the normalization process had failed. The bell and cable system was still secured together and the nuts were still fastened to the bolts. Rather, [AAH] found that the adapter and bell and cable system had slipped off the end of the hose. [AAH] concluded that the wrong sized bell and cable system was obtained by another [AAH] employee and erroneously provided to [Mr.] Urbieta. [AAH] also concluded that [Mr.] Urbieta did not affix the seat belt type strap used to secure the hose to the table and that [Mr.] Urbieta failed to properly secure the bell and cable system around the hose and adapt[e]r assembly.

[The Urbietas'] experts, James L. Glancey, Ph.D.[,] and Jack R. Vinson, Ph.D., submitted two expert reports: (1) Engineering Letter Report, June 20, 2017; and (2) Supplemental Engineering Report, August 10, 2017. [The Urbietas'] experts conclude that, "[b]y all accounts, the [b]ell and [c]able system that was used to secure the normalizing hardware to the hose failed." In their June 20, 2017 report, [the Urbietas'] experts identify specific shortcomings of Lewco, the manufacturer of the non-motorized table, and Fastenal, the maker of the nuts used to secure the bell and cable system together. In their August 10, 2017 report, [the Urbietas'] experts also cite specific shortcomings on the part of Hagerty, the manufacturer of the adapt[e]r.

[The Urbietas'] experts do not mention [Davis], the manufacturer of the extruder machine that applied a coating to the hose, nor do [the Urbietas] mention … Durafiber…, manufacturers of the yarn/fibers used to construct the hose. Furthermore, [the Urbietas'] experts do not make any findings that implicate the hose, its fibers, or its coating as contributing factors or sources of the accident.

Trial Court Opinion ("TCO"), 7/31/2018, at 2-5 (footnote and internal citations omitted).

As mentioned by the trial court, AAH, Davis, Hagerty, Fastenal, Lewco, and Durafiber each filed a motion for summary judgment. On July 31, 2018,

the trial court issued an opinion and order, granting summary judgment in favor of each of these Appellees. That same day, it entered judgment accordingly. On August 27, 2018, the Urbietas filed a timely notice of appeal. The trial court directed the Urbietas to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and they timely complied. In their Rule 1925(b) statement, the Urbietas asserted errors pertaining to only Hagerty and Lewco. Consequently, on November 26, 2018, AAH, Davis, Fastenal, and Durafiber filed an application for relief with this Court, requesting that we dismiss them from the appeal because there was no appeal or claimed error involving them before us. On December 10, 2018, this Court entered a *per curiam* order, dismissing the appeal as to those parties.

Presently, the Urbietas raise the following issues for our review:

1. Did the trial court err in finding that [the Urbietas] failed to produce evidence that Hagerty's adapter failed?

2. Did the trial court err by deciding issues of fact in holding that [Lewco was] not aware of the use of its table in the normalization process and therefore was not required to affix proper warnings?

3. Did the trial court err by deciding issues of fact in holding that [Lewco was] not required to supply proper guards for its tables?

Urbietas' Brief at 4.

At the outset, we acknowledge our standard of review for orders granting summary judgment:

It is well settled that summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. In ruling on such a motion, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving

- 5 -

party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. [F]ailure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient facts to make out a *prima facie* cause of action or defense.

On appeal, this Court

> may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.

To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

> Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Dunlap v. Federal Signal Corp.***, 194 A.3d 1067, 1069-70 (Pa. Super. 2018)

(footnote, internal quotation marks, and internal citations omitted).

In their first issue, the Urbietas argue that the trial court erred by finding as a matter of law that they failed to produce evidence that Hagerty's adapter failed. ***See*** Urbietas' Brief at 18. They explain that they produced expert

- 6 -

reports wherein their experts identified multiple defects in the drawings used by Hagerty to machine the adapter. *Id.* at 16. The Urbietas claim that, "[d]espite these deficiencies, Hagerty failed to contact [AAH] before machining a final product, and ultimately produced a defective product." *Id.* According to the Urbietas, "[t]he defect in the final product materially contributed to the adapter failing and injuring Mr. Urbieta." *Id.* Thus, they assert that Hagerty defectively designed the adapter and should be liable under Section 402A of the Restatement (Second) of Torts. *Id.* at 18-20.

Our Supreme Court has stated that Pennsylvania "remains a Second Restatement jurisdiction...." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 400 (Pa. 2014).[4] Section 402A of the Second Restatement provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a) the seller is engaged in the business of selling such a product, and
>>
>> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>>
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

---

[4] Our Supreme Court cautioned us, however, that "[t]he language of a restatement … is not necessarily susceptible to 'statutory'-type construction or parsing." *Id.* at 401.

Restatement (2D) of Torts § 402A (1965).

This Court has explained that:

To prevail in an action under [S]ection 402A, the plaintiff must prove that the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm. The threshold inquiry in all products liability cases is whether there is a defect. This threshold

> can be crossed … either by proving a breakdown in the machine or a component thereof, traditionally known as a manufacturing defect; or in cases where there is no breakdown, by proving that the design of the machine results in an unreasonably dangerous product, traditionally known as a design defect.

A third doctrine recognized under [S]ection 402A is the "failure-to-warn" theory, under which the plaintiff may recover for the defendant's failure to provide adequate instructions to the user on how to use the product as the product was designed. To succeed on a claim of inadequate or lack of warning, a plaintiff must prove that the lack of warning rendered the product unreasonably dangerous and that it was the proximate cause of the injury.

**Barton v. Lowe's Home Centers, Inc.**, 124 A.3d 349, 354-55 (Pa. Super. 2015) (internal citations and some quotation marks omitted).

With respect to Hagerty, the Urbietas only challenge the trial court's granting of summary judgment in favor of Hagerty on their defective design claim against it. **See** Urbietas' Brief at 18-20. For design defects,

> [t]he plaintiff may prove defective condition by showing either that (1) the danger is unknowable and unacceptable to the average or ordinary consumer, or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions. The burden of production and persuasion is by a preponderance of the evidence.
>
> … Whether a product is in a defective condition is a question of fact ordinarily submitted for determination to the finder of fact;

the question is removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue.

*Tincher*, 104 A.3d at 335.

In granting summary judgment in favor of Hagerty, the trial court explained:

Hagerty is a tool and die business that manufactured the adapt[e]r used to cap the end of the hose. Hagerty machined the adapt[e]r to the precise specifications provided by [AAH]. In their August 10, 2017 report, [the Urbietas'] experts note that they reviewed the mechanical drawings provided by [AAH] to Hagerty. Based on their review of the drawings, [the Urbietas'] experts opine that the drawings are defective in that: (1) there is a missing dimension in the drawing[;] (2) there is an improper call out for a [threaded] hole[;] (3) there is no specification for surface finish; and (4) Hagerty used a different steel alloy than specified by the drawings. However, [the Urbietas'] experts do NOT say that any of the imperfections in the drawings actually caused the adapt[e]r to fail. On the contrary, they specify that it was the "Bell and Cable System" used to secure the normalizing hardware (*i.e.*[,] the adapt[e]r) to the hose that failed. Consequently, [the Urbietas'] claims against Hagerty, based on negligence, products liability, and warranty theories all fail for lack of any evidence evincing proximate cause.

TCO at 14 (emphasis in original).

We agree with the trial court. While the Urbietas do not contest that evidence of proximate cause is required, they fail to point to specific evidence establishing that any purported defect in the adapter caused Mr. Urbieta's harm. Specifically, with respect to causation, the Urbietas argue:

The [June 20, 2017] Engineering Letter Report does note that the bell and cable system used to secure the normalizing hardware, including the at[-]issue adapter, failed. R.R. 1403. However, there is nothing in the June 20, 2017 Report that exculpates … Hagerty from liability in this matter. Rather, a fair reading of the June 20, 2017 Report and August 10, 2017 Supplemental Report, reveals that the issues identified in the Supplemental Report

caused or contributed to [the] overall failure of the bell and cable system and Mr. Urbieta's injuries.

Urbietas' Brief at 22-23. Problematically, the Urbietas do not cite to where their experts opined that the purported defects in the adapter caused or contributed to the overall failure of the bell and cable system and Mr. Urbieta's harm, nor do they develop an argument — with citations to specific evidence — to otherwise support this proposition. As Hagerty persuasively discerns, "[t]here exists no genuine issue of material fact for a jury to decide. Nowhere in either of [the] Urbietas' expert reports does the expert say that Hagerty's adapter caused [Mr.] Urbieta's accident. Reasonable minds cannot differ. Summary judgment was appropriate." Hagerty's Brief at 11. We concur. Accordingly, we conclude that the trial court did not err in entering summary judgment in favor of Hagerty on this basis.

In their second issue, the Urbietas advance that the trial court "erred by deciding issues of fact in holding that [Lewco] was not aware of the use of its table in the normalization process and therefore was not required to affix proper warnings." Urbietas' Brief at 24 (unnecessary emphasis omitted). They contend that Lewco "had a legal duty to warn of dangerous propensities of [its] products, a legal duty that [Lewco has] made impossible to fulfill based on their online ordering system," and aver that Lewco failed to provide warnings "regarding the amount of weight or force that could be exerted on

- 10 -

the machine, despite sufficient knowledge to do so." *Id.* at 28.[5] They argue

that "[a] portion of the conveyor supplied by Lewco … was functionally

destroyed during the incident which injured [Mr. Urbieta]," and claim that

"[t]he combined weight and force exerted by the hose exceeded the conveyor

table's physical capabilities and ultimately caused the conveyor table to fail.

If that at[-]issue conveyor table did not totally break down during the at[-

]issue incident, [Mr. Urbieta] would not have been injured." *Id.* at 27, 28.

Thus, the Urbietas advance that Lewco was negligent in failing to warn users

of the recommended weight and force to be exerted on the table. *See id.* at

24, 26-27.

> It is well established that:
>
> Negligence is the absence of ordinary care that a reasonably
> prudent person would exercise in the same or similar
> circumstances. To prove a negligence claim, the plaintiff must
> prove the following four elements: (1) a legally recognized duty

---

[5] By way of background, with respect to Lewco's online ordering system, the Urbietas explain that Lewco's online configurator "allowed customers to input necessary parameters for a required conveyor, such as the length, width, roller diameters, roll centers, light support, elevations[,] and other pertinent information, and the configurator would generate a quote with options for the customer." Urbietas' Brief at 9. However, they say that "a customer is unable to enter information about an end user's application in which the conveyor would be used." *Id.* Moreover, the Urbietas note that Lewco does not "sell [its] products directly to end users. Rather, [its] products are sold only to resellers…." *Id.* As a result, the Urbietas assert that Lewco purposely avoids learning of how their conveyors will be used. *See id.* at 24 ("It is clear [that] … Lewco [is] attempting to escape liability for [its] products by[] 1) selling [its] products through a third party, and 2) designing and running an online configurator that protects them from knowledge they would need to warn those who would come into contact with their products.").

that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff.

***Zimmerman v. Alexander Andrew, Inc.***, 189 A.3d 447, 452-53 (Pa. Super. 2018) (internal citations and quotation marks omitted).

Initially, the Urbietas do not adequately develop an argument to demonstrate that Lewco had a duty to warn AAH of the table's weight and force limitations.[6]  To support that Lewco had a duty, the Urbietas cite to two cases for seemingly general propositions, but fail to discuss those cases and analyze them in light of the circumstances in the case *sub judice*.  ***See***

_____

[6] We note that the trial court did not examine whether Lewco was negligent in failing to warn AAH of the weight/force capacity of the conveyor table, but instead focused its analysis on whether Lewco was negligent for failing to warn AAH not to use the table without guarding.  ***See*** TCO at 11, 13; ***see also*** Urbietas' Brief in Opposition to Lewco's Motion for Summary Judgment, dated 6/11/2017, at 9 ("There was no warning or instruction on the at[-]issue conveyor belt system which informed users of the recommended weight and force to be exerted on the machine, a warning that, if present, would have shifted liability to the user for using the conveyor belt against Lewco's warnings and instructions.").  Nevertheless, that the trial court did not specifically address this argument does not preclude our review because "we can look to the record to ascertain the reasons for the order." ***Commonwealth v. Hood***, 872 A.2d 175, 178 (Pa. Super. 2005) (citation omitted).  We surmise that the trial court did not address it in light of the Urbietas' expert report, which proffers opinions on the conveyor table's guards and safety features, but not its weight/force capabilities.  ***See*** TCO at 8 (determining that expert testimony is required in this case because "the cause of this accident is not within the ability of the average person of ordinary intelligence to determine on their own").  Despite the content of their expert report, the Urbietas do not raise a negligent failure to warn argument pertaining to guarding on appeal, and therefore we do not address it.  ***See*** Urbietas' Brief at 24-28 (making argument that Lewco was negligent for failing to warn of the amount of weight or force that could be exerted on the conveyor table).

Urbietas' Brief at 24.[7]  We decline to perform that analysis for them.  **See** Pa.R.A.P. 2119(a) ("The argument shall be … followed by such discussion and citation of authorities as are deemed pertinent."); **Commonwealth v. Hardy**, 918 A.2d 766, 771 (Pa. Super. 2007) ("[I]t is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities.  Citations to authorities must articulate the principles for which they are cited.") (citations omitted).

Furthermore, setting aside that the Urbietas failed to establish that Lewco had a duty to warn, the Urbietas also failed to prove that the lack of warnings regarding the weight/force capacity of the table proximately caused Mr. Urbieta's injuries.  In their brief, the Urbietas state that if the table did not break down during the incident, Mr. Urbieta would not have been injured. Urbietas' Brief at 28.  However, they provide no citation to record evidence, particularly their expert reports, to support this proposition.  **See** Pa.R.A.P. 2119(c) ("If reference is made to the … evidence … or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where

_____

[7] We note that one of these cases — **Harsh v. Petroll**, 840 A.2d 404, 415 (Pa. Cmwlth. 2003) — is a decision from the Commonwealth Court, which is not binding on this Court.  **See In re Barnes Found.**, 74 A.3d 129, 134 n.2 (Pa. Super. 2013) (citation omitted).  Additionally, the other citation provided by the Urbietas is to a portion of a dissenting opinion from a Supreme Court case.  **See** Urbietas' Brief at 24 (citing **Sherk v. Daisy-Hedon, A. Div. of Victor Comptometer Corp.**, 450 A.2d 615, 626 (Pa. 1982)).

the matter referred to appears…."); **see also** TCO at 8 (noting that expert testimony is necessary in the case at bar because "the cause of this accident is not within the ability of the average person of ordinary intelligence to determine on their own"); Lewco's Brief at 10 ("The facts of this case revealed that … Lewco['s] actions relative to the sale of the conveyor were not the proximate cause of [Mr. Urbieta's] injuries.   … [The Urbietas have] not produced an expert report to support any other conclusion.").  Our own review of the Urbietas' expert report shows that their experts rendered opinions on Lewco's failure to provide or recommend a guarding system, not its failure to warn AAH of the weight/force capacity of the table.  Thus, we conclude that the Urbietas did not demonstrate that Lewco's failure to warn AAH of the table's weight/force capacity proximately caused Mr. Urbieta's injuries.  **See Sherk**, 450 A.2d at 617 (determining that the evidence presented precluded a finding that the allegedly inadequate warnings caused the harm).  Accordingly, the trial court did not err in entering summary judgment in favor of Lewco on this basis.

In their final issue, the Urbietas claim that the trial court erred by deciding that Lewco was not required to supply proper guards for its tables. Urbietas' Brief at 28.  By not supplying guarding, the Urbietas argue that Lewco provided a defective conveyor table.  **See id.** at 33.  In advancing this argument, the only case reference they provide is to **Tincher**, which they briefly point to for the principle that "a product is in a defective condition if 'a reasonable person would conclude that the probability and seriousness of

harm caused by the product outweigh the burden or costs of taking precautions.'" *Id.* at 29 (quoting *Tincher*, 104 A.3d at 335). Relying on this tenet, they contend that "the probability and seriousness of harm caused by an unguarded conveyor plainly outweighs the burden or costs of taking precautions, such as providing or recommending guarding." *Id.* at 31. In support, they explain that "it cannot be claimed that there is [an] unreasonable burden [on Lewco] in recommending guarding for its conveyors, especially when the same is recommended on a daily basis. Nor can Lewco … claim the cost of recommending or supplying guarding would be prohibitive, especially where [it is] the seller[] of the product and could expect the customer to reasonably pay for the additional guarding to the conveyor table." *Id.* at 32 (citing deposition testimony of Lewco's corporate designee wherein he represented that he recommends guarding on a daily basis).

We deem this argument waived. "[A]rguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal." *Krentz v. Consolidated Rail Corp.*, 910 A.2d 20, 37 (Pa. 2006) (citations omitted). This rule "is consistent with our Supreme Court's efforts to promote finality, and effectuates the clear mandate of our appellate rules requiring presentation of all grounds for relief to the trial court as a predicate for appellate review." *Id.* (citation and quotation marks omitted). Here, in their response to Lewco's summary judgment motion, the Urbietas did not argue that the probability and seriousness of the harm caused by an unguarded conveyor outweigh the burden or costs of taking precautions.

- 15 -

They also did not raise therein that, because Lewco recommends guarding on a daily basis, it would not be burdensome for it to do so. Likewise, they did not aver in their response that it would not be cost-prohibitive for Lewco to supply guarding, as users would bear the cost of buying the additional guarding from Lewco. Rather, the Urbietas countered Lewco's motion for summary judgment by arguing that Lewco was strictly liable because the conveyor table purportedly lacked the strength to hold the weight and force of the hose. *See* Urbietas' Brief in Opposition to Lewco's Motion for Summary Judgment, dated 6/11/2017, at 10-14.[8] We will not permit the Urbietas to raise new arguments on appeal. Accordingly, based on the foregoing, we affirm the trial court's granting summary judgment in favor of Lewco.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2019

---

[8] The Urbietas also do not examine and discuss other design defect cases that have applied a risk-utility analysis. *See Hardy*, *supra.* Given the relatively recent changes to products liability law in Pennsylvania, as well as the complexity of this area of the law, more than a generic, meager cite to *Tincher* is warranted.